**In re Ralph K. PAUKNER and Patricia A. Paukner, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Ralph K. PAUKNER et al., Defendants.**

**Bankruptcy No. B80–02378.**
**Adv. No. B80–0721.**

United States Bankruptcy Court,
N. D. Ohio,
Eastern Division.

Jan. 9, 1981.

Robert S. Balantzow and Robert C. Bowes, Nadler, Sokolsky, Bahas & Balantzow Co., L.P.A., Cleveland, Ohio, for debtors-defendants.

Jonathan B. Forman, Dept. of Justice, Tax Division, Washington, D. C. and Randolph Baxter, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

## MEMORANDUM OF OPINION AND ORDER

JOHN F. RAY, Jr., Bankruptcy Judge.

A petition under Chapter 13 of the Bankruptcy Code was filed by debtors, Ralph K. Paukner and Patricia A. Paukner, on July 2, 1980. On September 5, 1980, debtors filed their Chapter 13 plan, and on October 29, 1980, the United States of America filed its objections to debtors' plan and alleged nine grounds as to why debtors' plan should not be confirmed. Thereafter, on November 7, 1980, the day set for hearing on the objection of the United States of America to the plan, debtors filed a Chapter 13 modified plan, and it was agreed by all counsel that the objections of the United States of America to the original plan could be refiled as of November 7, 1980, considered as objections to the modified plan and the hearing proceed.

Prior to debtors filing the Chapter 13 case, they were owners of real estate located at 278 Avon Belden Road, Avon Lake, Ohio. Debtors' real estate was levied upon and seized by the Internal Revenue Service on August 30, 1978, pursuant to Title 26 U.S.C. § 6331 [1] and the procedure outlined

1. Section 6331, in pertinent part, provides:

"(a) *Authority of Secretary or delegate.*—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

"(b) *Seizure and sale of property.*—That term 'levy' as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (d)(3), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

in Title 26 U.S.C. § 6335 [2] for collection of federal withholding taxes for the years 1974 through 1976, social security taxes for the years 1974 through 1976 and individual income taxes for the year 1973, totaling in excess of $53,000.00. On September 18, 1978, supplemental levies and seizures of the same real estate were effected to satisfy tax liabilities arising from two sole proprietorships owned by debtor, Ralph K. Paukner.

The Internal Revenue Service then proceeded to sell the debtors' interest in the property, in accordance with Title 26 U.S.C. § 6335 [3] subject to two prior mortgages.

**2.** Section 6335, in pertinent part, provides:

"(a) *Notice of seizure.*—As soon as practicable after seizure of property, notice in writing shall be given by the Secretary or his delegate to the owner of the property (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized and, in the case of real property, a description with reasonable certainty of the property seized."

**3.** Section 6335, in pertinent part, provides:

"(b) *Notice of sale.*—The Secretary or his delegate shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made, or if there be no newspaper published or generally circulated in such county, shall post such notice at the post office nearest the place where the seizure is made, and in not less than two other public places. Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof. Whenever levy is made without regard to the 10-day period provided in section 6331(a), public notice of sale of the property seized shall not be made within such 10-day period unless section 6336 (relating to sale of perishable goods) is applicable.

"(c) *Sale of indivisible property.*—If any property liable to levy is not divisible, so as to enable the Secretary or his delegate by sale of a part thereof to raise the whole amount of the tax and expenses, the whole of such property shall be sold.

"(d) *Time and place of sale.*—The time of sale shall not be less than 10 days nor more than 40 days from the time of giving public notice under subsection (b). The place of sale shall be within the county in which the property is seized, except by special order of the Secretary or his delegate.

"(e) *Manner and conditions of sale.*—

(1) *Minimum price.*—Before the sale the Secretary or his delegate shall determine a minimum price for which the property shall be sold, and if no person offers for such property at the sale the amount of the minimum price, the property shall be declared to be purchased at such price for the United States; otherwise the property shall be declared to be sold to the highest bidder. In determining the minimum price, the Secretary or his delegate shall take into account the expense of making the levy and sale.

(2) *Additional rules applicable to sale.*—The Secretary or his delegate shall by regulations prescribe the manner and other conditions of the sale of property seized by levy. If one or more alternative methods or conditions are permitted by regulations, the Secretary or his delegate shall select the alternatives applicable to the sale. Such regulations shall provide:

(A) That the sale shall not be conducted in any manner other than—

(i) by public auction, or

(ii) by public sale under sealed bids.

(B) In the case of the seizure of several items of property, whether such items shall be offered separately, in groups, or in the aggregate; and whether such property shall be offered both separately (or in groups) and in the aggregate, and sold under whichever method produces the highest aggregate amount.

(C) Whether the announcement of the minimum price determined by the Secretary or his delegate may be delayed until the receipt of the highest bid.

(D) Whether payment in full shall be required at the time of acceptance of a bid, or whether a part of such payment may be deferred for such period (not to exceed 1 month) as may be determined by the Secretary or his delegate to be appropriate.

(E) The extent to which methods (including advertising) in addition to those prescribed in subsection (b) may be used in giving notice of the sale.

(F) Under what circumstances the Secretary or his delegate may adjourn the sale from time to time (but such adjournments shall not be for a period to exceed in all 1 month).

(3) *Payment of amount bid.*—If payment in full is required at the time of acceptance of a bid and is not then and there paid, the Secretary or his delegate shall forthwith proceed to again sell the property in the manner provided in this subsection. If the conditions of the sale

On September 26, 1978, notice of sale by sealed bids was posted in two public places and delivered to the taxpayers. In that notice, the time, place, manner and description of the property to be sold are stated. The original date of the sale was to have been October 26, 1978; however, in order to accommodate a request of the taxpayers, the sale was postponed until November 13, 1978.

At the sealed bid sale ultimately conducted on November 13, 1978, by Revenue Officer Albert Kadlec, Patrick McMuldren was declared the successful bidder and purchaser of the property. His bid of $27,025.00 exceeded the minimum bid of $17,000.00. Payment of the balance of the purchase price was deferred until December 14, 1978, at which time payment in full was made. A certificate of sale was then issued to Patrick McMuldren. Under the provisions of Section 6337(b)[4] the 120-day redemption period commenced the day after the sale, November 13, 1978, and expired March 12, 1979. Pursuant to Section 6338 of the Internal Revenue Code of 1954, the District Director of Internal Revenue was to execute a deed passing the title and interest of the United States in the seized property to the successful purchaser, if the taxpayers did not redeem the property within the 120-day period.

Debtors, Ralph K. Paukner and Patricia A. Paukner, instituted suit on March 9, 1979, in the United States District Court for the Northern District of Ohio, Eastern Division, against the United States and Patrick McMuldren, purchaser of the seized property. A temporary restraining order was granted *ex parte*. That order restricted the Internal Revenue Service from executing a certificate of transfer and purchase deed to the premises at 278 Avon Belden Road, Avon Lake, Ohio, and delivering same to the purchaser, Patrick McMuldren. That order was extended an additional ten days, until March 29, 1979, and a hearing for a permanent injunction was held on March 28, 1979, before Judge Thomas D. Lambros. Judge Lambros issued a proposed memorandum opinion and order on June 4, 1979. That order would have voided the federal tax sale and certificate on the conditions that the Paukners satisfy completely all outstanding delinquent tax liabilities and that McMuldren be fully reimbursed for interest expenses, costs and reasonable attorney fees, in addition to the basic purchase price.

The United States objected to the proposed memorandum opinion and order within the ten days, as allowed by that document, and no final order has ever been entered. The parties engaged in extensive settlement negotiations; however, the Paukners were unable to come up with the adequate financing necessary for any settlement.

In the meantime, First Federal Savings and Loan Association of Lakewood, which

---

permit part of the payment to be deferred, and if such part is not paid within the prescribed period, suit may be instituted against the purchaser for the purchase price or such part thereof as has not been paid, together with interest at the rate of 6 percent per annum from the date of the sale; or, in the discretion of the Secretary or his delegate, the sale may be declared by the Secretary or his delegate to be null and void for failure to make full payment of the purchase price and the property may again be advertised and sold as provided in subsections (b) and (c) and this subsection. In the event of such readvertisement and sale any new purchaser shall receive such property or rights to property, free and clear of any claim or right of the former defaulting purchaser, of any nature whatsoever, and the amount paid upon the bid price by such defaulting purchaser shall be forfeited."

4. Section 6337(b) of the Internal Revenue Code of 1954 provides:

"(b) *Redemption of real estate after sale.*—

(1) *Period.*—The owners of any real property sold as provided in section 6335, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 120 days after the sale thereof.

(2) *Price.*—Such property or tract of property shall be permitted to be redeemed upon payment to the purchaser, or in case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary or his delegate, for the use of the purchaser, his heirs, or assigns, the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum."

had a prior mortgage on the real property in question, commenced a foreclosure action against the same Avon Lake property, *First Federal Savings and Loan Association of Lakewood v. Ralph K. Paukner, et al*, case number 84234–79, Court of Common Pleas, Lorain County, Ohio. At no point in time did the Paukners inform the United States District Court or the purchaser, Mr. McMuldren, of that foreclosure action. Finally, after First Federal Savings and Loan Association of Lakewood had already been granted summary judgment on its claim, but prior to judicial sale of the property, Jonathan B. Forman, Trial Attorney of the Department of Justice, became aware of the state court foreclosure action and so informed Mr. McMuldren's attorney. Patrick McMuldren immediately moved to intervene in the state court action and to stay the proceedings so that the United States District Court could issue a final order. The motion to intervene was apparently granted in late June of 1980.

On April 8, 1980, Judge Lambros, apparently because settlement had appeared imminent, issued an order that the United States District Court case be dismissed and all further proceedings considered post-trial proceedings. When settlement appeared to be impossible, on June 19, 1980, McMuldren filed a motion to reopen proceedings in the United States District Court case. A hearing before Judge Lambros on that motion was scheduled for July 7, 1980. On July 2, 1980, the Paukners filed the Chapter 13 proceeding, and on July 3, 1980, the Bankruptcy Court issued an order staying the parties to the actions in the United States District Court and the state court.

The question to be decided by this Court is whether the real estate, after seizure, is "property of the estate" within the meaning of Section 541 of the Bankruptcy Code, Title 11 U.S.C. § 541.

 The Court here adopts, in part, the conclusions of law in the case of *In re Parker GMC Truck Sales, Inc. v. United States of America*, 6 BCD 899 (S.D.Ind. 1980) which read as follows:

"1. Section 542 of the Bankruptcy Code requires delivery to the debtor of property which it 'may use, sell or lease under Section 363 * * *.' Section 363 of the Bankruptcy Code allows the debtor to use, sell or lease 'property of the estate.' Section 541(a) of the Bankruptcy Code defines property of the estate as 'all legal or equitable interests of the debtor in property as of the commencement of the case.' Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.' House Report No. 95–595, 95th Cong. 1st Sess. (1977) 367–8; Senate Report No. 95–989, 95th Cong. 2d Sess. (1978) 82–3. If the debtor holds only bare legal title to property, this is all it acquires upon filing of bankruptcy. An interest in property which is limited in the hands of the debtor before bankruptcy, is equally limited in the hands of the estate after bankruptcy. 124 Cong. Rec. H 11,096 (Sept. 28, 1978); S 17,413 (Oct. 6, 1978). Accordingly, the estate can obtain no greater interest in property than the debtor had before bankruptcy.
"2. The only rights which the debtor had in the seized property as of the date of bankruptcy, were: (a) a right to redeem the property by full payment of the tax and the expenses of seizure, under Section 6337(a) of the Internal Revenue Code of 1954; (b) a right to have the net proceeds of sale by the Internal Revenue Service applied to its tax liabilities, under Section 6342 of the Internal Revenue Code of 1954; and (c) a right to any surplus proceeds of sale by the Internal Revenue Service, under Section 6342.
"3. The rights enumerated above are the only rights in the seized property which became property of the estate under Section 541 of the Bankruptcy Code. The debtor did not have a right to return of the property without payment of the tax and no such right became property of the estate. The seized property itself did not become part of the estate, but only the rights of the debtor therein, as enumerated above, became part of the estate. Therefore, the debtor has no right to

turnover of the property itself under Section 542 of the Bankruptcy Code.

"4. The defendant here does not challenge the jurisdiction of the Court and there is no issue as to jurisdiction. The jurisdiction of the Court to decide this case on the merits is conceded by all parties. The Court has jurisdiction of the parties and the subject matter of this action. The conclusions of the Supreme Court with respect to jurisdiction under the old Bankruptcy Act, in *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), are not applicable under the new Bankruptcy Code. Nevertheless, the conclusion of the Supreme Court in *Phelps* that, under the applicable provisions of the Internal Revenue Code, the Government has 'full legal right' (p. 337, 95 S.Ct. at 1732) to the seized property, remains valid, under the new Code.

"5. The Court here follows the decision in *Bush Gardens, Inc. v. United States*, 45 AFTR 2d 80–744 (Bk.Ct., N.J., 1979). The Court declines to follow the contrary decisions in *Troy Industrial Catering Service v. State of Michigan*, 2 B.R. 521, decided January 18, 1980 (Bk.Ct., E.D. Mich.) and *Matter of Aurora Cord and Cable Company*, 2 B.R. 342, decided January 23, 1980 (Bk.Ct., N.D.Ill.), because those cases misconstrue Section 541 of the Bankruptcy Code as including in the estate all property in which the debtor has any interest. Section 541 includes in the estate all interests which the debtor has in property; this is not the same as all property in which the debtor has any interest. Furthermore, the Government was not a party to *Troy Industrial Catering* and discussion of its rights in that case is *dicta*."

On the basis of the foregoing memorandum, which is hereby adopted as my findings of fact and conclusions of law, pursuant to Bankruptcy Rule 752,

It is ORDERED, ADJUDGED and DECREED that confirmation of debtors' Chapter 13 modified plan be, and the same is hereby denied.

It is further ORDERED, ADJUDGED and DECREED that the motion of Patrick T. McMuldren for relief from stay, being an improper pleading, is hereby dismissed.

It is further ORDERED, ADJUDGED and DECREED that the United States of America, Internal Revenue Service, may proceed with the sale of the property under seizure, since the real estate in question is not property of the estate.

It is further ORDERED, ADJUDGED and DECREED that the debtors have ten days from date hereof in which to convert their Chapter 13 case to a Chapter 7 liquidation case, and upon their failure to do so, this order shall be deemed to have dismissed said Chapter 13 case.