In re AMCO PRODUCTS, INC., Debtor.

John R. STONITSCH, Trustee, Plaintiff,

v.

COMMERCE BANK OF KANSAS CITY, N.A., Defendant.

No. 82–0227–CV–W–3.

United States District Court,
W.D. Missouri, W.D.

July 25, 1983.

John R. Stonitsch, Kansas City, Mo., trustee/plaintiff.

Bruce E. Strauss, Shockley, Reid & Koger, Kansas City, Mo., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

This cause is before the Court on appeal from a Turnover Order from the Bankruptcy Court. On February 19, 1982, the Bankruptcy Court entered its order directing the Commerce Bank of Kansas City to turnover to John R. Stonitsch, trustee in bankruptcy of Amco Products, Inc., the sum of $32,162.52 plus interest, 717 B.R. 758. Commerce Bank has appealed that ruling.

The trustee in bankruptcy of Amco Products, Inc., (Amco) brought this action in bankruptcy court against Commerce Bank (Bank) seeking to have the Bank turn over certain sums of money to the trustee as assets of the bankruptcy estate of Amco. The money in question was that being held in a "differential account" by Bank.

Amco had been engaged in the business of selling home improvements. In the course of its business, sales were often made upon a retail credit basis to the home owners. Bank and Amco entered into a

Dealer Agreement, whereby the bank would purchase contracts (security agreements, conditional sales contracts, etc.) from Amco. The Dealer Agreement provided for a dealer reserve account, called a differential account. The agreement provided in pertinent part as follows:

(3) In the event the Bank shall purchase contracts from the Dealer for less than face value less the Bank's portion of the finance charge the Bank will make an entry on its books indicating the potential interest of the Dealer. Any potential interest shall be held by the Bank in a "Differential Account" and the same is hereby assigned to the Bank as security for any and all obligations of the Dealer, and shall not be regarded as a deposit. Such Differential Account shall accumulate to an amount equivalent to Five percent (5%) of the aggregate balance of all contracts outstanding, purchased by the Bank from the Dealer. After collection, in part or in full, the Bank may release to the Dealer from time to time, or at mutually agreed periods, any portion, or agreed portion of said Differential Account.

Amco had no right to withdraw funds from the differential account. As the contracts were defaulted upon by the consumer, Bank would debit the account to make up for any losses. While dealer paper was outstanding, there was no right to withdraw by any representative of Amco. If the reserve account fell below a certain amount of money, Amco had to make deposits to replenish the account and these deposits were not made in the ordinary course of business. At the time of filing of the filing of the voluntary bankruptcy petition on October 12, 1979, $32,162.52 remained in the account. Since the petition was filed, losses have occurred and will continue to occur.[1] Stipulation of Facts (May 1, 1981).

In his Turnover Order, the bankruptcy judge found that the Uniform Commercial Code was inapplicable to this situation and that the issues must be decided instead on common law. Bank agrees with this conclusion in its Appellate Brief. The bankruptcy court also found that Amco had no right to set off against the $32,162.52. Appellant also concedes in its brief that it had no matured right of set off. Appellant Bank, however, contends that the bankruptcy court erred in its decision that the trustee had a present right to the money. It asserts that the trustee can have no greater right to the property than the bankrupt, and that the bankrupt had no right to the funds while paper was outstanding. According to bank, all Amco had was a "potential interest" in the funds. The Bank also argues that the bankruptcy court was under the mistaken assumption that the differential account was a "deposit."

### Standard of Review

■■■ The bankruptcy court's findings of fact are to be accepted by this Court unless clearly erroneous. *Solari Furs v. United States*, 436 F.2d 683, 684 (8th Cir. 1971); *Farmers Bank of Clinton v. Julian*, 383 F.2d 314, 320 (8th Cir.1967). In determining whether a finding is clearly erroneous, the courts use the same standard as in a review of a district court judgment. *Farmers Bank of Clinton v. Julian*, 383 F.2d at 319–320. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). See also *Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960). Findings of fact are also considered clearly erroneous when they are "(1) not supported by substantial evidence, (2) contrary to the clear preponderance of the evidence, or (3) based upon an erroneous view of the law." *Magidson v. Dug-*

---

**1.** The last due date on the contracts held by Bank is November 1986. As of May 31, 1981, Bank calculated that $30,277.96 was chargeable to the reserve account. Defendant's Brief, p. 2 (June 15, 1981).

*gan,* 212 F.2d 748, 752–753 (8th Cir.1954), *cert. denied,* 348 U.S. 883, 75 S.Ct. 124, 99 L.Ed. 694 (1954).

The Court has carefully considered the record, and hereby finds that the bankruptcy court's finding that the trustee was entitled to the funds in the differential account as of the time of the filing of the bankruptcy petition was clearly erroneous in that it is not supported by substantial evidence and is based on an erroneous view of the law.

### Discussion

█ In seeking the entry of a turnover order, the burden is on the trustee to show that the property or proceeds are part of the bankruptcy estate. *First National Bank of Clinton v. Julian,* 383 F.2d 329, 333, 339 (8th Cir.1967). The turnover must be supported by clear and convincing evidence. *Id.*

The general rule is that "[t]he trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition." *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966). The trustee is also granted the powers of a judicial lien creditor as of the date of the bankruptcy and the trustee may avoid any transfer of property or obligation that would be avoidable by a creditor who obtains a judicial lien of all the debtor's property. See, 11 U.S.C. § 544(a)(1).

This Court finds that under the applicable law, the only property or interest available to either a judicial lien creditor or the bankrupt is that potential interest in the account set out in the dealer agreement, *i.e.,* the right to any funds remaining in the account after all contracts are liquidated. The trustee is entitled only to this potential interest.

█ In dealing with the relationship between bank and customer, one of the foremost principles is that the relationship is governed by the contract between the par-

ties. This principle was emphasized by the Supreme Court in *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). In *Bank of Marin,* the bankrupt had opened a checking account with the bank. The question in the case was whether the bank was liable to the trustee for honoring checks drawn before but presented for payment after the filing of the petition for bankruptcy. The Court emphasized that under the contract between the bank and the customer, the bank had the right and duty to honor checks properly drawn and presented and that, generally, the "trustee acquires no rights in the checking account greater than the bankrupt himself." 385 U.S. at 101–102, 87 S.Ct. at 276.

Other cases have also emphasized the importance of the contract between bank and customer. See *Clabbey v. First National Bank,* 320 S.W.2d 738, 741 (Mo.App. 1959) ("The rights and duties as between the bank and those in whose name the deposit is made ordinarily are governed by the contract, express or implied, that results in the course of the establishment of the contract."); *Smith v. American Bank & Trust Co.,* 639 S.W.2d 169, 173 (Mo.App. 1982) ("[T]he relationship between a bank and depositor is generally that of a debtor and creditor to be governed by contract."); *In the Matter of the Estate of Parker,* 536 S.W.2d 25, 29 (Mo. En Banc 1976) ("[T]he relationship between a bank and its depositor is generally that of a debtor and creditor to be governed by that contractional relationship.").

Under the dealer agreement between Bank and Amco, Amco had no right to withdraw at will. The contract specifically stated that the bank *may* release portions from the account but did not require such release until all contracts and obligations of Amco were liquidated even after termination of the agreement.

In addition, the contract between the two specifically said the differential account was not to be considered a deposit.

█ Although the bankruptcy judge found that the money in the account was a

general deposit, this Court finds that there is no substantial evidence to support this finding. Generally, in order for funds to be considered a deposit, the funds must be withdrawable at the will of the depositor and be made in the regular course of the business. *Katz v. First National Bank of Glen Head,* 568 F.2d 964, 970 (2d Cir. 1977).[2] *Black's Law Dictionary* defines deposit as follows:

> The act of placing money in the custody of a bank or banker, for safety or convenience, to be withdrawn at the will of the depositor or under rules and regulations agreed on. Also, the money so deposited, or the credit which the depositor receives for it.

*Black's Law Dictionary* (5th Ed.1979). In the case at bar, under the provisions of the dealer agreement, as explained in the stipulations of the parties, Amco, the alleged depositor, had no right to withdraw the funds while dealer paper was outstanding and the deposits made directly by Amco to replenish the account were not in the regular course of business.[3]

The Bank argues that the differential account is a common law pledge. Although the account might well fall within that category,[4] this was not argued before the bankruptcy judge and the Court is not basing its decision on that theory.

 In conclusion, this Court finds that there is insufficient evidence to support the bankruptcy court's finding that the fund in question was a deposit. The Court also find that the bankruptcy court's finding that the trustee was entitled to the full $32,162.52 in the account at the time of the filing of the bankruptcy petition was based on an erroneous view of the law. The bankruptcy court failed to give sufficient weight to the principle that "[a]n interest in property which is limited in the hands of the debtor before bankruptcy, is equally limited in the hands of the estate after bankruptcy." *In re Paukner,* 10 B.R. 29, 33 (B.C.N.D.Ohio 1981). Neither the bankrupt itself or a judicial lien creditor would be entitled to the funds in the differential account while dealer paper is still outstanding.

In light of the above discussion, it is hereby

ORDERED that the above-styled cause is hereby reversed and remanded to the bankruptcy court for further proceedings consistant with this opinion.

---

**2.** In *Katz,* the question before the court was whether the funds in a bank account were a transfer to the bank, and therefore could be set aside as a preference, or a deposit, and subject to set off.

**3.** In an interrogatory to the bank, answered in October of 1980, the Bank was asked, "Were the deposits made in these accounts made in the regular course of business?" and the bank responded "yes." This answer, however, does not necessarily contradict the stipulation because, although it is unclear, the question could well have been referring to the deposits made by the bank from the portion of the purchase price it withheld.

**4.** A reserve account was held to be a common law pledge in *First National Bank of Clinton v. Julian,* 383 F.2d 329 (8th Cir.1967).