In re TAYLOR MOTORS, Debtor.

Jeri COPPA, Plaintiff,

v.

SECURITY BANK OF
NEVADA, Defendant.

Bankruptcy No. BK–RN–80–789.
Adv. No. 82–220.

United States Bankruptcy Court,
D. Nevada.

May 15, 1986.

Joseph J. Van Walraven, Reno, Nev., for plaintiff.

F. DeArmond Sharp, Reno, Nev., for defendant.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Chief Judge.

This proceeding requires the Court to determine whether a dealer reserve account maintained by the Defendant Security Bank of Nevada is property of the debt-

or's estate, whether the trustee has an interest in the account which would entitle her to turnover of the account balance, and whether the defendant may setoff a prepetition claim against the balance shown in the dealer reserve account. For the reasons stated below, the Court concludes that the balance shown in the debtor's dealer reserve account is estate property to which the defendant, rather than the plaintiff, is entitled.

In October of 1976, Debtor Taylor Motors, Inc. ("Taylor"), was engaged in the retail car sales business. Taylor sold cars on time and took from the purchasers retail installment contracts, or vehicle security agreements ("contracts"). On October 1, 1976, Security National Bank of Nevada, now known as Security Bank of Nevada ("Security"), and Taylor entered into an Automobile Dealer Agreement ("Agreement") under which Security purchased Taylor's interest in contracts generated by Taylor. Security agreed to pay Taylor two amounts for the contracts: (1) a cash payment for the principal amount financed, and (2) a conditional future payment of an amount not exceeding the difference between Security's required interest rate and the contractual interest rate.

Security created a bookkeeping account on its records to track the portion of the finance charge to be paid to Taylor in the future. This account was designated in the Agreement as the "dealer's reserve". At the time a contract was purchased from Taylor by Security, the dealer reserve account was credited with the full amount of the dealer's share of the interest based on the assumption that the contract would run until maturity and that the buyer would make all payments as agreed. If the contract was paid before maturity, the reserve account was reduced by the amount representing Taylor's proportionate share of the unearned interest. For bookkeeping purposes, Security had the option of carrying the reserve account in its general ledger, or with its demand deposit accounts. Regardless of where the bank elected to carry the account on its books, it had, pursuant to the Agreement, sole control over the account.

A typical transaction under the Agreement may be illustrated by hypothetical example. Assume that Taylor sells an automobile using a conditional sales contract bearing interest at 8% per annum. The principal amount financed is $10,000.00 and the total finance charge is $3,200.00. The total contract amount of $13,200.00 is payable in 48 equal monthly installments of $275.00. Security's minimum required interest rate or the "bank buy-rate" is 7% per cent which produces finance charges of $2,800.00 over four years. The difference in interest paid over the 48-month contract life using the contractual rate of 8% and the bank buy-rate of 7% is $400.00. This $400.00 is the maximum payment under the contract which Security agrees to pay to Taylor at some time in the future, provided that certain events occur or do not occur, as specified in Paragraphs 4 and 6 of the Agreement, and the contract purchaser pays all 48 payments.

The Court notes that the $400.00 interest differential in this example is not a cash deposit, but rather is an expectancy based on the assumptions that the vehicle purchaser will honor the contract as written and make the 48 monthly payments when due, and that the purchaser will not prepay the contract. If the purchaser prepays the contract, the contract balance must be reduced by the amount of the unearned interest. Nev.Rev.Stat. § 97.225. The amount of unearned interest is calculated using the Rule of 78s. When prepayment occurs, the finance charge of $3,200.00 is reduced and, consequently, the amount of the finance charge the dealer is to receive is also reduced. The effect of a buyer default, repossession, and resale of the car on interest earnings is the same as prepayment.

Taylor commenced its Chapter 11 case on November 5, 1980. On that date, there were two dealer reserve accounts maintained by Security for Taylor: One for recreational vehicles, and the other for cars. On October 31, 1980, the total in both reserves was $36,871.00 and the out-

standing contingent liability on contract was $1,026,636.00. On March 31, 1984, the total in both reserves was $12,203.69 and the total contingent liability on unpaid contracts was $26,633.55 (three outstanding recreational vehicle contracts and ten car contracts). The last of the car contracts matured in May of 1985, and the last of the RV contracts will mature in February of 1987.

The trustee, pursuant to 11 U.S.C. § 542, seeks to compel Security to turn over the amount appearing as the balance in the dealer reserve account. Security has resisted contending that the amount Taylor seeks is not on deposit in Taylor's name. Security argues that under the terms of the Agreement, a portion of the purchase price of the vehicles under the Conditional Sales Contracts, and thus, the debtor's interest in the dealer reserve account, is not now due and payable. Therefore, the debtor's interest in the dealer reserve account is an unmatured and unliquidated obligation that may be payable in the future in accordance with the provisions of the Agreement. Security also contends that it has the right to setoff all amounts in the dealer reserve account against claims against Taylor.

The Court concludes that the dealers reserve account is estate property, that the trustee is not entitled to turnover, and that Security may setoff the balance in the dealer reserve account against Security's claim against Taylor.

Subject to exceptions not applicable in this case, the filing of a bankruptcy petition creates an estate comprised of all legal and equitable interests in real and personal property held by the debtor when the petition is filed. 11 U.S.C. § 541(a) ("Bankruptcy Code" or "Code"). The legislative history of Code § 541 describes the inclusiveness of the bankruptcy estate:

The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... as well as property recovered by the trustee under § 542 ..., if the property recovered was mere-

ly out of the possession of the debtor, yet remained "property of the debtor".

Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5868, 5869. Under the broad scope of Code § 541(a), the debtor's interest in the dealer reserve account became estate property when the bankruptcy petition was filed. *See In re Amco Products, Inc.*, 50 B.R. 723, 725 (D.C.W.D. Mo.1983); *In re Morristown Lincoln-Mercury, Inc.*, 42 B.R. 413, 416 (Bankr.E.D. Tenn.1984); *In re Southern Equipment Sales, Co.*, 24 B.R. 788, 792 (Bankr.D.N.J. 1982); *In re American Motor Home Rentals Co.*, 10 B.R. 53, 55 (Bankr.W.D.Mo. 1981).

In this case, the estate property is the balance shown in the dealer reserve account. Part of the dealer reserve account balance represents earned interest while part represent unearned interest. The rights to the balance in the dealer reserve account are controlled by contract. The agreements governing the rights in the dealer reserve account are the Automobile Dealer Agreement and Guaranties executed by Taylor on each contract purchased by Security from Taylor. The pertinent paragraphs of the Agreement are paragraphs 2, 3, 4, 5 and 6.

Paragraph 2 provides that Security agrees to purchase conditional sales contracts from Taylor and that the contracts shall be assigned and guaranteed by Taylor in the form provided. Paragraph 2 provides further, that "such assignment and guaranty shall govern the rights and responsibilities of the parties to this agreement, except as they may be modified herein." Paragraph 3 fixes the cash purchase price as the agreed percentage of the unpaid balance, exclusive of finance charge.

Paragraph 4 sets forth the balance of the purchase price to be paid by Security to Taylor which is Taylor's participation in the interest portion of the contract and is established in the dealer's reserve account. Paragraph 4 provides that no remittances from the dealer reserve account shall be made by Security to Taylor: (1) if Taylor

defaults in the performance of any obligation to Security (Taylor was in default to Security at least by May 15, 1980); or (2) after termination of the Agreement; or (3) if Taylor no longer engages in the automobile business (Taylor ceased business after January 1981). Remittances in any of the foregoing instances are not to be made until all of Taylor's obligations to Security, whenever arising and however evidenced, whether absolute or contingent, primary or secondary, due or deferred, have been discharged in full. All such obligations are secured by the dealer reserve account and Security is given recourse to the reserve for any and all obligations owed to Security by Taylor, whether or not now due. The security interest created by the provisions of Paragraph 4, to the extent that Taylor has rights in the collateral, was perfected by a financing statement filed May 20, 1980 with the Nevada Secretary of State.

Paragraph 5 provides that when an obligation of Taylor upon a guaranty of contract becomes absolute, that the amount as determined by that paragraph shall be paid by Taylor to Security upon demand without recourse to the dealer's reserve. Paragraph 6 sets forth limitations on Taylor's guaranty, but provides that when Taylor is no longer engaged in the automobile business, Security may sell repossessed vehicles at prices satisfactory to Security, apply the proceeds to the unpaid balance on the contracts, and if the proceeds are not equal to the remaining unpaid balance, Taylor must pay the deficiency upon demand.

Bankruptcy Code § 542(b) provides in pertinent part:

[A]n entity that owes a debt that is property of the estate and that is matured, payable in demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

The trustee's rights to turnover and possession of estate property under Code § 542 is limited. *See In re Amco Products, Inc.*, 50 B.R. at 725. One of the defenses to turnover under Code § 542(b) is the right of setoff, which is preserved in the bankruptcy case through Code § 553.

■ Bankruptcy Code § 553(a) provides in pertinent part:

Except as otherwise provided in this section and sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

Code § 553 does not grant any creditor any substantive rights against property of the bankruptcy estate. Section 553 simply preserves the right of setoff as granted by nonbankruptcy law. *See In re Morristown Lincoln-Mercury, Inc.*, 42 B.R. at 416; *In re Donato*, 17 B.R. 708, 709 (Bankr.E.D. Va.1982); *see also Matter of Van Dyk Research Corp.*, 13 B.R. 487, 494 (Bankr.D. N.J.1981). 4 L. King, M. Cook, R. D'Agostino & K. Klee, *Collier on Bankruptcy*, paragraph 553.02 at 553–9 (15th Ed.1980).

A creditor's right to setoff is established by showing:

(1) a prepetition debt owed by the creditor to the debtor, and

(2) a prepetition claim owed by the debtor to the creditor, and

(3) mutuality of the debt and the claim.

Code § 553(a); *In re Morristown Lincoln-Mercury, Inc.*, 42 B.R. at 416. A "debt" is simply a "liability on a claim". 11 U.S.C. § 101(11). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(4)(A). Mutuality of the debt and claim means that the "creditor is indebted to the debtor who likewise owes a debt to the creditor...." *In re Morristown Lincoln-Mercury, Inc.*, 42 B.R. at 416.

Security's recourse claims against Taylor arise from contracts purchased from Taylor under the Agreement prior to the commencement of this case on November 5, 1980. Security's claims against the debtor under contracts purchased pursuant to the Agreement were unliquidated, contingent, or unmatured when Taylor's bankruptcy petition was filed. Nevertheless, Security's claims on the contracts purchased from Taylor are clearly prepetition claims. *See* 11 U.S.C. § 101(4)(A); *In re Morristown Lincoln-Mercury, Inc.,* 42 B.R. at 418.

Security's indebtedness to Taylor arises from the prepetition Agreement creating the dealer reserve account. As to the dealer reserve account, Taylor is creditor and Security is debtor. As noted earlier, the dealer reserve account represents Taylor's share of the interest earned, and as yet unearned, on contracts sold by Taylor to Security. Taylor, however, has no right to any money from the dealer reserve account until all obligations it owes Security are completely fulfilled in accordance with the terms of the Agreement. While the debt owed to Taylor by Security was and remains unliquidated, contingent, or unmatured, it is, nevertheless, a valid prepetition debt. 11 U.S.C. § 101(11); 11 U.S.C. § 101(4)(A); *In re Morristown Lincoln-Mercury, Inc.,* 42 B.R. at 419.

Both Security's claim against Taylor and Security's indebtedness to Taylor arose under the prepetition Agreement. Thus, mutuality of the obligations between Security and Taylor is satisfied. Security has shown that it has a valid prepetition claim, that Security owes Taylor a valid prepetition debt, and that the claim and the debt are mutual. Security is, therefore, entitled under Code § 553, to setoff its claim against its indebtedness to Taylor.

In summary, the Court holds that Taylor's interest in the dealer reserve account is estate property, that the trustee has failed to prove a case for turnover under Code § 542, and that Security is entitled tosetoff its claim against the balance in the dealer reserve account. This Memorandum

Decision constitutes Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.