In re HIGH SIERRA
TRANSPORT, INC., Debtor.

HIGH SIERRA TRANSPORT,
INC., Plaintiff,

v.

REDEX, INC., Defendant.

Bankruptcy No. 5–88–00222.
Adv. No. 5–88–0038.

United States Bankruptcy Court,
M.D. Pennsylvania.

June 30, 1989.

---

....

Jeffrey S. Treat, Honesdale, Pa., for debtor/plaintiff.

Michael J. Donohue, Scranton, Pa., for defendant.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

This proceeding is before the court on a motion requesting summary judgment filed by the Defendant, Redex, Inc. (hereinafter "Redex"). For the reasons provided herein, we grant Redex's Motion for Summary Judgment.

On or about April 22, 1988, the debtor, High Sierra Transport, Inc. (hereinafter "Debtor") filed a complaint for turnover of property against Redex. The complaint alleges, inter alia, that Redex has in its possession property of the estate totalling approximately $395,000 in accounts receivable and "bank account deposits." Redex filed an answer substantially denying the averments of the complaint and asserted the following affirmative defenses: (1) the complaint fails to state a claim upon which relief can be granted; (2) the property requested to be turned over is not property of the estate within the meaning of 11 U.S.C. § 542 and, therefore, is not subject to turnover; (3) Redex holds a perfected security interest in the accounts receivable and that its interest is superior to any interest of the estate; (4) the "bank account deposits" are in the nature of an unmatured debt of Redex to the debtor subject to conditions precedent that have not yet occurred and are, therefore, not yet due and owing. Thereafter, on August 26, 1988, Redex filed a Motion for Summary Judgment together with a supporting affidavit, exhibits, and memorandum in support of the motion. Debtor filed an answer to the motion and, in short, alleges that there is a genuine issue of fact as to whether or not Redex possesses certain bank accounts which Redex has refused to turn over to the estate. Redex asserts that the "bank accounts deposits" as to which the debtor seeks turnover are in fact, a "withholding amount" as described further in Paragraph 10 of the service contract. The trustee did not oppose the Motion for Summary Judgment and, as such, did not participate in these proceedings.

The facts are as follows. On or about May 1, 1987, Redex and the debtor entered into a service contract which provided that Redex would purchase debtor's accounts receivable with recourse. Redex was given the exclusive right to collect the purchased accounts receivable and to receive all payments on those accounts receivable unless and until High Sierra would repurchase the accounts from Redex pursuant to a "chargeback" provision found in the agreement. Redex has been unable to collect certain of the accounts receivable and pursuant to Paragraph 3 of the service contract, has demanded that the debtor repurchase the accounts pursuant to the "chargeback" procedures of the agreement. As of August 1, 1988, the total amount owing on these unpaid "chargeback" accounts approximates $194,448.06. Pursuant to Paragraph 10 of the service contract, as security for the payment of chargebacks and performance of all other obligations, Redex withheld a portion of the payments owing to the debtor by Redex for the purchase of the accounts receivable. As of August 1, 1988 this amount approximated $92,273.52. We note that the debtor has referenced this amount as either "cash account deposits" or "withholding amounts," Redex responds that the "withholding" referenced in Paragraph 10 is a contingent debt owed by Redex to the debt-

or and as such does not necessarily represent funds in a bank account. Redex does, however, acknowledge the withholding and in fact can establish current balances owed to debtor. We will, for clarity, refer to the withholding for security as detailed in Paragraph 10 of the agreement as the "withholding amount." Further, pursuant to Paragraphs 10 and 14 of the service contract, Redex has no obligation to pay the withholding amount to the debtor prior to the occurrence of certain conditions precedent, including the repurchase of the "chargeback" accounts from Redex. Debtor, as of the date of hearing on this motion, has not repurchased the "chargeback" accounts receivable.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which is made applicable to this proceeding through Bankruptcy Rule 7056, summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3rd Cir.1981); *Franklin Federal Savings & Loan Association of Wilkes–Barre v. Ripianzi* (In re Ripianzi), 27 B.R. 15 (M.D.Pa. 1982). Additionally, "the moving party has the burden of demonstrating the absence of any material factual issue genuinely in dispute." *In re Euro–Swiss Int'l Corp.*, 33 B.R. 872, 11 B.C.D. 113 (S.D.N.Y.1983). The plaintiff must "do more than whet the curiosity of the court, he must support vague accusations and surmise with concrete particulars." See *In re Euro–Swiss Int'l Corp.*, citing *Applegate v. Top Associates*, 425 F.2d 92, 96 (2d Cir.1970). The Third Circuit has made it clear "that courts are to resolve any doubts as to the existence of genuine issues of fact against moving parties." *Hollinger, supra; Ness v. Marshall*, 660 F.2d 517, 519 (3rd Cir.1981). In addition, "[i]nferences to be drawn from the underlying facts contained in evidential sources submitted to the trial court must be viewed in light most favorable to the party opposing the motion." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3rd Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We find Redex has met its burden of demonstrating there are no genuine issues as to any material facts requiring this court to grant a summary judgment in its favor. We reach this decision because the pleadings, depositions and affidavits convince us that no genuine issue exists to be tried.

■ The first issue for resolution is whether or not the "withholding amount" is in fact property subject to turnover to the estate. We note that other than the bare allegation that the accounts receivable and the withholding amount in question are property of the estate the debtor in this case has provided the court with no further evidence by way of affidavit or otherwise to support this allegation. In seeking entry of a turnover order, the burden is on the trustee/debtor-in-possession to show that property or proceeds are part of the bankruptcy estate. See *In re Amco Products, Inc.*, 50 B.R. 723 (Bankr.W.D.Mo.W. D.1983). When looking at the relationship between the debtor and the creditor, the foremost principle is that this relationship is governed by the contract between the parties. See *In re Amco Products, Inc., supra* at 725. "The general rule is that 'the trustee succeeds only to such rights as the bankrupt possesses; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition.'" See *In re Amco Products, Inc., supra* at 725 citing *Bank of Marin v. England*, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966). See also *In re A & B Homes, Ltd.*, 98 B.R. 243 (Bkrtcy.E.D.Va.1989).

■ Pursuant to the instant contract, Redex had the exclusive right to collect the purchased accounts receivable and receive all payments on those accounts unless and until such time that the debtor would repurchase the accounts from Redex pursuant to certain chargeback requirements set forth in Paragraphs 3 and 4 of the service contract.

Paragraph 3 of the service contract sets out in detail what constitutes default giving Redex the right to "chargeback" against the debtor.

### 3. *Repurchase of Freight Bills.*

In the event a Freight Bill purchased by Redex is determined by Redex to not be in compliance with the terms and conditions of this Service Contract at the time of purchase by Redex or at any time thereafter, or in the event Redex is unable, after making reasonable efforts, to collect a Freight Bill purchased by Redex within one hundred (100) calendar days from the date or purchase, User [debtor] agrees to purchase any and all such Freight Bills from Redex upon demand. (The procedure whereby a User shall so purchase a Freight bill is referred to herein as a "Chargeback"). The purchase priced to be paid by the User for a Chargeback shall be the face amount of the Freight Bill.

Redex may, in its sole discretion, set off against any amounts owing by Redex to User for any reason whatsoever, including, without limitations, payments for the purchase of Freight Bills, any amount due and owing by User for Chargebacks.

Any waiver or extension by Redex of the right to demand that User purchase such Chargeback Freight Bills shall not constitute a waiver or extension to any other Freight Bills and such waiver or extension may be revoked at any time without notice.

By Affidavit of R. Bryan Jensen, General Counsel to Redex, Redex has been unable to collect certain accounts receivable purchased from the debtor. Redex has made demand that the debtor repurchase the accounts pursuant to Paragraph 3 of the service contract, but the debtor has failed to repurchase the chargeback accounts. As of August 1, 1988, the total amount due and owing on the unpaid chargeback accounts is $194,448.06. See Affidavit Paragraph 5.

To secure the payment of the chargeback and performance of all the other obligations under the contract paragraph 10 of the agreement provides as follows:

### 10. *Withholding for Security*

As security for the payment of Chargebacks and performance of all obligations of User hereunder, Redex shall withhold from amounts owing to User by Redex the amount of $75,000, which amount is estimated to equal thirty percent (30%) of outstanding receivables. Such amount may be withheld by Redex from the payments for Freight Bills sold to Redex by User at the rate of fifteen percent (15%) per day.

In the sole discretion of Redex, the amount of such withholding may be adjusted every ninety (90) days or at such longer intervals as Redex may select. If, upon such adjustment, the amount of withholding is to be increased, User shall promptly pay such amount upon request or Redex may withhold such amount from payments for Freight Bills purchased from User.

Redex shall be free to use all withheld amounts as working capital or as Redex otherwise sees fit. Redex shall have no obligation to segregate, not commingle or otherwise account for the use of such withholdings. User shall not be entitled to any interest on withholdings. Withholdings shall be a debt owed to User by Redex, payable in accordance with the terms and conditions of this Service Contract.

Redex withheld a portion of the payments owing to debtor by Redex for the purchase of the accounts receivable. This total amount withheld approximates $92,273.52. See Affidavit R. Bryan Jensen at Paragraph 6.

Further, Paragraph 8 of the agreement provides that the "User [Debtor] acknowledges and agrees that it has no right, title or interest whatsoever in the funds constituting payment of a Freight bill purchased by Redex, that said funds are the sole and exclusive property of Redex, and that any intentional and knowing use of said funds by User constitutes theft."

In a factually similar case to this one, the court in *In re A & B Homes, Ltd.*, 98 B.R.

243, 19 B.C.D. 26 (Bankr.E.D.Va.1989), found that "the only property right or interest available to the estate of the debtor is 'that potential interest in the account set out in the dealer agreement, i.e., the right to any funds remaining in the account after all contracts are liquidated' ". Citing *In re Amco Products, Inc., supra.* As in the *In re Amco Products, Inc.* and *In re A & B Homes, Ltd.*, cases, this court also concludes that the bankruptcy estate does possess an interest in the reserve account, albeit, however limited or insignificant the interest. The estate's interest is limited to the potential that upon conclusion of the agreement between the parties, there may be withholding amounts over and above any outstanding uncollected receivables subject to chargeback pursuant to the terms of the agreement.

Additionally, this court will not change the terms of the contract entered into between the parties nor will it permit the debtor to take advantage of the favorable provisions of the contract while at the same time ignoring its detriments. Pursuant to the contract, Redex has made demand upon the debtor for payment on chargeback accounts and this demand has not been met. Consequently, we will not order turnover of the "withholding" account at this time.

Redex has also made demand upon the debtor for adequate protection for turnover of the withholding amount. The court's records do not reflect that either the debtor or the trustee, at any time, has proffered adequate protection.

■ Redex also argues that it is entitled to a right of setoff under the terms of the Bankruptcy Code and, consequently, should not be required to turn over the "withholding account." Section 553 of the Bankruptcy Code provides in pertinent part as follows:

§ 553. Setoff.

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

Once again, this court finds much guidance in the case *In re A & B Homes, Ltd., supra,* concerning a creditor's right of setoff in a bankruptcy situation. There are essentially three elements necessary to establish a creditor's right to a setoff:

"1) a debt owing by the creditor to the debtor which arose before the commencement of the case;

2) a claim of the creditor against the debtor which also arose before commencement of the case; and

3) mutuality of the debt and claim.

11 U.S.C. Sec. 553(a); *In re Morristown Lincoln–Mercury, Inc.,* 42 B.R. 413, 416 (Bankr.E.D.Tenn.1984); *In re Fulghum Const. Co.,* 23 B.R. 147, 151 (Bankr.M.D. Tenn.1982); *In re Taylor Motors,* 60 B.R. 760, 763 (Bankr.D.Nev.1986)."

*A & B Homes, Ltd., supra,* 19 B.C.D. at 29, 98 B.R. at 248.

The court continues as follows:

"A 'debt' is a liability on a 'claim.' 11 U.S.C. Sec. 101(11). 'Claim' is very broadly defined in the Bankruptcy Code and means, in part, 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....' 11 U.S.C. Sec. 101(4). Mutuality of obligation simply means that the creditor is indebted to the debtor who likewise owes a debt to the creditor, i.e., something must be owed by both sides. 4 *Collier on Bankruptcy* Para. 553.04[2], 553–15 (15th ed. 1984). The claims between the parties must be owing and due in the same capacities. *Morristown Lincoln–Mercury, supra,* at 416; *In re Fred Sanders co.,* 33 B.R. 310, 311 (Bankr.E.D.Mich.1983). This does not mean that the debts and claims must be of the same character. [*In re*] *Braniff Airways, supra* [42 B.R. 443] at 447 (Bankr.N.D.Tex.1984); *In re Lott,* 79 B.R. 869, 870 (Bankr.W.D.Mo.1987)."

Section 553 does not prohibit setoff of a creditor's claim arising prepetition, unliqui-

dated or unmatured as of the petition date, against a creditor's prepetition liability. *In re A & B Homes, Ltd., supra,* 19 B.C.D. at 29, 98 B.R. at 248 citing *Morristown Lincoln–Mercury,* 42 B.R. 413, 417 (Bankr.E. D.Tenn.1984). Redex has failed, however, in its effort to show that it has met all the requirements of § 553 in order to effectuate a proper setoff. Redex has indicated by affidavit, notice of motion and statement of material facts and in its brief, that as of August 1, 1988, the total amount owing on unpaid "chargeback" accounts was approximately $194,448 and that the withholding amount approximated $92,273. We note, however, that the bankruptcy was filed several months prior in April of 1988. Consequently, without more, this court cannot make a finding as to whether or not the creditor's claim against the debtor does in fact arise prepetition against the creditor's prepetition liability. In addition to the timing of the claim of the creditor against the debtor and the debt owing by the creditor to the debtor, there are other restrictions in asserting the setoff right as follows:

"... The Bankruptcy Code provides that filing of a petition operates as an automatic stay against the setoff of any debt owing to the debtor that arose before the commencement of the case against any claim against the debtor. 11 U.S.C. Sec. 362(a)(7). It is well settled that the automatic stay prohibits the exercise of the right of setoff, but does not prohibit the right to setoff itself. *In re Conti,* 50 B.R. 142, 149 (Bankr.E.D.Va.1985). *See also In re Handy,* 41 B.R. 172 (Bankr.E. D.Va.1984); *Kenney's Franchise Corp. v. Central Fidelity Bank,* 22 B.R. 747, 748 (Bankr.W.D.Va.1982); *In re Terry,* 7 B.R. 880, 882 (Bankr.E.D.Va.1980). Courts have allowed a creditor to seek relief from the stay in order to exercise setoff rights prior to discharge. *Id. See also United States v. Norton,* 717 F.2d 767, 773 (3d Cir.1983); *United States v. Powers,* 28 B.R. 86 (Bankr.E.D.Pa.1983). Thus, the holders of valid setoffs may not execute them without obtaining relief from the automatic stay. *In re Ohning,* 57 B.R. 714, 716 (Bankr.N.D.Ind.1986)."

In re *A & B Homes, Ltd.* 19 B.C.D. at 29, 98 B.R. at 249.

Consequently, based upon all the pleadings together with the affidavit and other supporting documentation, we conclude that Redex has met its burden for the granting of a motion for summary judgment, but only to the extent that it denies the debtor's complaint for turnover. We do not make a determination as to whether or not Redex has a right to setoff against the withholding amount. We make both findings without determining whether or not Redex does in fact have a properly filed security interest in the accounts receivable and the withholding amount.