In re WORLD COMMUNICATIONS, INC., Debtor.

WORLD COMMUNICATIONS, INC., Plaintiff and Appellee,

v.

DIRECT MARKETING GUARANTY TRUST, Defendant and Appellant.

Civ. No. 86–C–1056W.
Bankruptcy No. LA 86A–03980.
Adv. No. 86–PA–0893.

United States District Court, D. Utah, C.D.

April 17, 1987.

Ronald J. Drescher, Los Angeles, Cal., Weston L. Harris, Salt Lake City, Utah, for plaintiff and appellee.

Francis J. Nielson, Salt Lake City, Utah, R. Mont McDowell, Salt Lake City, Utah, for defendant and appellant.

MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on appeal from the bankruptcy court's decision entered November 12, 1986. Oral argument with respect to this appeal was heard on March 6, 1987. Appellant, Direct Marketing Guaranty Trust ("DMGT"), was represented by R. Mont McDowell and the appellee, World Communications, Inc. ("WCI"), was represented by Weston L. Harris and

Scott Dew. Following oral argument, the court took the matter under advisement. Having thoroughly reviewed the entire file including all memoranda and the transcript from the bankruptcy trial, and having also made a careful examination of the pertinent authorities, the court enters the following memorandum decision and order.

## Factual Background

WCI sells products on television by providing a toll-free telephone number through which customers may place orders by credit card or otherwise. In order to collect cash for the credit card purchases, WCI enlisted the services of DMGT, a credit card processing service. DMGT receives information from WCI regarding the credit card purchase orders and then relays that information to each cardholder's bank for authorization. Upon confirmation of a valid account, the cardholder's bank transfers funds to DMGT in accordance with the purchase charge. From that amount, DMGT deducts its processing fees and any existing chargebacks and then transmits the remaining amount to WCI as net proceeds. To cancel or interrupt such a credit card purchase, a cardholder notifies its bank which then turns to DMGT for a refund payment or "chargeback."

Paragraph 18 of the written "Service Agreement" between WCI and DMGT provides a remedy in the event DMGT deems itself financially insecure in its arrangement with WCI. It authorizes DMGT, upon ten days' notice to WCI, to create an escrow account by withholding payments due to WCI in an amount equal to all combined chargebacks for the previous six months, or five percent of the net income of the previous month, whichever amount is less.

At the beginning of June, 1986, DMGT apparently deemed itself insecure and therefore arranged to meet and negotiate with WCI. The outcome of that meeting is disputed. DMGT claims that the meeting resulted in an oral agreement to depart from paragraph 18 of the Service Agreement by allowing DMGT to withhold in escrow an amount equal to twenty percent of the net proceeds from the previous month rather than five percent as prescribed by the contract. WCI, on the other hand, denies ever agreeing to any oral modification of the written contract. Additionally, WCI claims that DMGT did not satisfy the condition in paragraph 18 that DMGT provide notice ten days prior to creating an escrow. Following the June meeting with WCI, DMGT did in fact withhold an amount equivalent to twenty percent of WCI's net proceeds and placed it in escrow. It continued to do so until WCI filed bankruptcy on September 15, 1986, at which time the escrow contained $30,629.29.

Thereafter, WCI brought an adversary proceeding against DMGT for turnover of the escrow account claiming it to be property of the estate. The case was heard in bankruptcy court on November 5, 1986, by Judge John H. Allen. Ruling from the bench, Judge Allen found (1) that the written contract could not be orally modified, and (2) that the funds were properly held in escrow, that they constituted "res" or property of the estate, and that, as such, they were subject to turnover. Judge Allen then ordered DMGT to turn over the escrow in its entirety. DMGT is appealing the bankruptcy court's decision with respect to both issues.

## The Order for Turnover

Pursuant to 11 U.S.C. § 542, turnover of property to the estate involves consideration of several elements: (1) whether the item in question is property of the debtor's estate, (2) whether there is a security interest involved that warrants adequate protection, and, if so, (3) whether the trustee of the estate can provide adequate protection. An additional consideration is whether the item is necessary for reorganization and administration of the estate. On appeal, the parties addressed only the first of these elements, namely, whether the item in question, i.e., the escrow account, constitutes property of the debtor/WCI's estate.

Because the Code does not explicitly define "property of the estate," considerable litigation has ensued regarding the definition of that phrase. The only tangible

guideline provided by the Bankruptcy Code is Section 541(a)(1) which describes the "estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." Academic treatises agree that the legislative intent behind the current Bankruptcy Code is that § 541(a)(1) "includes every conceivable interest of the debtor in the estate." Norton Bankruptcy Law and Practice § 29.04 at 29-6 (1981). *See also* 4 Collier on Bankruptcy § 541.01 (1986) and Weintraub and Resnick's Bankruptcy Law Manual § 4.03 at 4-4 and 4-5 (1985).[1] In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 2312-13, 76 L.Ed.2d 515 (1983), the United States Supreme Court confirmed and perhaps extended the expansive scope of the "estate" concept by treating the language of § 541 "as a definition of what is included in the estate, rather than as a limitation." The Supreme Court explained the policy behind this "estate" principle, saying that, "to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate ... even ... property of the estate in which a creditor has a secured interest." 462 U.S. at 204, 103 S.Ct. at 2313.[2]

Pertinent case law demonstrates that even rights of redemption,[3] accounts receivable,[4] reserve accounts,[5] and other similar kinds of interests [6] are considered property of the estate under § 541(a)(1). Trusts and escrows are less obvious, however, and must be considered individually with respect to the circumstances of each. When a trust is created with the debtor's money for the benefit of another, that account is usually not considered property of the debtor's estate even though the debtor arguably retains at least some kind of interest in it.[7] Furthermore, where the debtor's deposits constitute a statutory or constructive trust, the contents are almost always excluded from property of the debtor's estate.[8]

Escrow accounts are more difficult to diagnose. Factors that are relevant, although not necessarily determinative, include whether the debtor initiated and/or agreed to the creation of the escrow, what if any control the debtor exercises over it, the incipient source of it, the nature of the funds put into it, the recipient of its remainder (if any), the target of its benefits, and the purpose for its creation.[9] In short,

**1.** The legislative intent behind § 541(a)(1) is found in HR Rep. No. 95-595, 95th Cong., 1st Sess. 367-68 (1977), and in S Rep. No. 95-989, 95th Cong., 2nd Sess. 82-83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

**2.** For other examples of secured interests subject to possible turnover, *see In re Riding*, 44 B.R. 846 (Bkrtcy D. Utah 1984) and *In re Davis*, 40 B.R. 934 (Bkrtcy D.S.D.1984).

**3.** *See, e.g., In re Bialac*, 712 F.2d 426 (9th Cir. 1983); *In re Markee*, 31 B.R. 429 (Bkrtcy D. Idaho 1983).

**4.** *See, e.g., In re Suppliers, Inc.*, 41 B.R. 520 (Bkrtcy E.D.Ky.1984); *In re Hudson Valley Ambulance Service, Inc.*, 11 B.R. 860 (Bkrtcy S.D.N.Y.1981).

**5.** *See, e.g., In re Southern Equipment Sales Co., Inc.*, 24 B.R. 788 (Bkrtcy D.N.J.1982); *In the Matter of American Motor Home Rentals, Inc.*, 10 B.R. 53 (Bkrtcy W.D.Mo.1981); *In re Cosner*, 3 B.R. 445 (Bkrtcy D.Or.1980).

**6.** These include contingent remainders, future interests, and rights to refunds, among others.

*See* Weintraub & Resnick, Bankruptcy Law Manual § 4.03 at 4-4 and 4-5 (1985).

**7.** *See, e.g., In re Palm Beach Heights Development & Sales Corp.*, 52 B.R. 181 (Bkrtcy S.D.Fla. 1985); *In the Matter of Lenk*, 44 B.R. 814 (Bkrtcy W.D.Wis.1984).

**8.** With respect to statutory trusts, *see, e.g., Selby v. Ford Motor Company*, 590 F.2d 642 (6th Cir. 1979); as for constructive trusts, *see, e.g., In re American International Airways, Inc.*, 44 B.R. 143 (Bkrtcy E.D.Pa.1984).

**9.** *Consider the following samples: In re Creative Data Forms*, 41 B.R. 334 (Bkrtcy E.D.Pa.1984) (Escrow consisting of loan money owned and controlled by defendant was being held in abeyance for debtor's use pursuant to debtor's fulfillment of conditions precedent and thus did not constitute property of debtor's estate); *In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir.1985) (Escrow created as security for repayment of loan issued to debtors was technically property of debtors' estate, but was subject to a constructive trust imposed upon it for satisfaction of others' equitable interests; consequently, only excess interest not needed to pay mortgages would be turned over as property of debtors' estate); *South Side Atlanta Bank v. Thomasson*,

whether an escrow constitutes property of a debtor's estate depends entirely on the nature and circumstances of the escrow in question.[10]

■ After a careful consideration of the entire record, this court affirms the conclusion of the bankruptcy court that the escrow account in question constitutes property of the estate. The reasons for this are as follows. First of all, on the face of the written contract between the parties, i.e., the Service Agreement, there are a number of indications that the escrow funds are incipiently, or at least ultimately, assets of WCI. Page two of the contract defines "escrow account" as an account to be "set up in (WCI's) name for the benefit of (WCI's) customers." Paragraph 18 states that the account will be made up of "payments due (WCI)." Note 5 of paragraph 18 provides that interest earned on the escrow account will be payable to WCI.

Secondly, the evidence at trial indicates that DMGT created the escrow account by withholding funds that otherwise would have been transmitted to WCI as proceeds from sales of its products. In substance, therefore, the escrow account constitutes a form of conduit for WCI's proceeds. These proceeds are temporarily within the control of DMGT for the purpose of processing chargebacks, but are clearly distinguishable from actual earnings or profits of DMGT.

Accordingly, this court concludes that the escrow account constitutes property of the bankruptcy estate pursuant to § 541(a)(1). However, this is not determinative of whether the bankruptcy court was correct in ordering that the escrow be turned over to the trustee. As noted at the beginning of this decision, other issues must be considered. All "property of the estate" pursuant to § 541 is potentially subject to turnover; however, the Code does not state that all items which qualify as property must necessarily be turned over. Indeed, the Code addresses other factors that implicitly bear on an ultimate order for turnover.[11] The assurance of adequate protection where a secured interest is involved is paramount among these.

The Code does not specify whether the issue of adequate protection must be determined prior to a secured interest being turned over to the trustee. However, a substantial amount of case law indicates that this determination should be treated as a condition precedent to a turnover order. *See, e.g., In re Taco Ed's, Inc.,* 63 B.R. 913, 929 (Bkrtcy N.D. Ohio 1986) ("It is well established that an entity in possession of estate property which also has a security interest in that property is entitled to receive adequate protection as a *precondition* to any turnover which may be required under 11 U.S.C. § 542" [emphasis added]); *In re Riding,* 44 B.R. 846, 849 (Bkrtcy D. Utah 1984) ("If a request is made for adequate protection by a secured creditor with an interest in the property and the debtor is unable to provide adequate protection ... turnover will not be ordered"). In *Whiting Pools,* the United States Supreme Court does not specifically state that adequate protection is a prerequisite to turnover; however, the language of that opinion can be and has been read to imply as much. *See, e.g.,* 4 Collier on Bankruptcy ¶ 542.02 at 542–11 (15th ed.

406 F.2d 407 (5th Cir.1969) (Escrow created for benefit of bankrupt would have been automatically subject to turnover but for lack of resolution of third party's adverse claim by bankruptcy court); *In the Matter of Noel Simon,* 167 F.Supp. 214 (E.D.N.Y.1958) (Escrow created to protect security of mortgagee's interest consisted of contributions by mortgagor/debtor for (1) taxes, assessments and insurance premiums, (2) interest on unpaid balance, (3) amortization of principal; as such, it was not subject to turnover).

**10.** Numerous cases that do not entail escrows per se are still relevant inasmuch as they ad-

dress money accounts in one form or another that are subject to turnover disputes. *See, e.g., In re FLR Company, Inc.,* 58 B.R. 632 (Bkrtcy W.D.Pa.1985) and *In re Glover Construction Company, Inc.,* 30 B.R. 873 (Bkrtcy W.D.Ky. 1983) both dealing with progress payments in construction contracts; *In re Amco Products, Inc.,* 50 B.R. 723 (W.D.Mo.1983) dealing with a "differential account" consisting of a debtor's "potential interest;" *In re ABW, Inc.,* 29 B.R. 88 (Bkrtcy D.Nev.1983) dealing with an impound account set up by debtor in anticipation of litigation.

**11.** *See, e.g.,* 11 U.S.C. § 363 and § 522.

1986) ("The Supreme Court's holding in *Whiting Pools* confirms that a creditor in possession of collateral that the trustee may use, sell, or lease under section 363 must turn over the collateral to the trustee after commencement of the case, but may demand adequate protection as a condition precedent to turnover"); R. Aaron, Bankruptcy Law Fundamentals § 10.02(2) at 10–9 (1984) ("The right to compel turnover in order to invoke Bankruptcy Code § 363 may require that adequate protection be given to the secured party. Therefore, the turnover order would be issued only upon the debtor coming forward with what the court finds to be adequate protection of the secured party's interest"); Treister, Trost, Forman, Klee & Levin, Fundamentals of Bankruptcy Law § 4.02 at 125 (1986) ("Since the trustee's right of use is ordinarily conditional on furnishing adequate protection for whatever interest the one in possession may have, ... the turnover also is ordinarily subject to the requirement of providing adequate protection").

■ In the absence of specific statutory language and in light of the apparent trend in case law and academic commentary, this court holds that a determinination of (1) whether a party has a secured interest and (2) whether that secured interest can be adequately protected by the trustee is a condition precedent to an order for turnover. Consequently, even though this court affirms the bankruptcy court's finding that the escrow is indeed property of the estate, this court declines to affirm the turnover order without first remanding the case for consideration of the other two prerequisites listed above.[12]

## Contractual Dispute

If DMGT's interest in the escrow is found to be unsecured and the escrow is therefore subject to turnover without adequate protection, the contractual modification issue will be moot because everything contained in the escrow will have to be turned over whether it was legitimately withheld by DMGT or not. However, if the escrow account is found to constitute a security interest entitling DMGT to adequate protection, the contractual modification issue will be crucial in determining whether all or merely that part of the escrow account which was justified under the contract is entitled to protection. While the security and protection issues are being remanded to the bankruptcy court, this court will briefly address the contractual dispute in light of its potential future relevance.

Evidence at the trial indicated that the disputed oral modification related to two issues: (1) whether *any* money could legitimately be withheld and placed in escrow by DMGT in light of WCI's allegation that the notice requirement of paragraph 18 was not adhered to, and (2) whether, assuming the escrow was properly created, DMGT was entitled to withhold an amount equal to twenty percent of WCI's proceeds rather than five percent as authorized by the written contract. Regarding the first issue, this court accepts the inferential finding of the bankruptcy court that the escrow account itself was validly created regardless of a potential notice problem at its inception.

---

**12.** *Caveat:* Utah's Bankruptcy Judge Ralph R. Mabey, in *In re Alpa Corp.*, 11 B.R. 281, 290 (Bkrtcy D. Utah 1981), proposes in footnote 6 that timely request by a secured creditor may be required for an entitlement to (and perhaps even mere consideration of) adequate protection:

> It may be that the statute, as written, requires turnover without reference to the interest of an entity in possession of the property unless that entity timely requests under Section 363(e) the finding of adequate protection or relief from the state under Section 362(d). 4 Collier on Bankruptcy § 542.02 at 542–6 (15th ed. 1980) says: "The better view is that turnover must be tendered immediately after commencement of the case but that adequate protection is a condition precedent to turnover *if demanded by the creditor.*" (Emphasis added.)

Judge John H. Allen himself treated a secured creditor's timely request as a prerequisite for adequate protection in *In re Riding* as cited and quoted *supra* at page 501. This would indicate that, upon remand, the bankruptcy court should consider (1) whether DMGT has a secured interest that warrants adequate protection and, if so, (2) whether WCI's trustee can provide adequate protection, as well as, (3) whether DMGT has made a timely request for such.

With respect to how the oral modification affected the amount that could properly be withheld, however, this court cannot affirm the bankruptcy court's conclusion. The bankruptcy court acknowledged that the trial evidence presented a factual dispute regarding a possible oral modification of the initial written contract. Nevertheless, it determined that the contract was not modified in light of its preexisting provision requiring any modification to be made in writing.

■ Accepted principles of contract law clearly endorse enforcing oral modifications of written contracts when certain circumstances exist.[13] Therefore, this court remands the case for determination of whether or not the circumstances were such that the parties entered into an enforceable oral modification of the written contract, taking into account the possible applicability of waiver and/or estoppel, as referred to by DMGT at the trial.[14]

Accordingly,

IT IS HEREBY ORDERED that the bankruptcy court's finding that the escrow account in question constitutes property of the estate is AFFIRMED. However, the case is REMANDED prior to execution of a turnover order for determination of the following issues: (1) the existence of a security interest, and (2) the propriety and availability of adequate protection.[15] The case is also REMANDED on the issue of whether there was an oral modification of the written agreement pertaining to the amount of sales proceeds that DMGT could legitimately withhold and place in escrow.

---

**13.** *See, generally,* 17A C.J.S. Contracts § 377c (1963) ("It is generally held that a contract stipulating that any modification must be in writing may nevertheless be modified verbally" [cites omitted] ); 17 Am.Jur.2d Contracts § 467 (1964) ("The rule followed by the courts generally ... is that although the parties to a contract may stipulate that it is not to be varied except by an agreement in writing, they may, ... by a subsequent contract not in writing, modify it by mutual consent").

**14.** Oral modifications of written contracts may be enforceable by virtue of the doctrines of waiver and estoppel. *See* Restatement 2d of Contracts § 150 (1981) and Calamari & Perillo, Contracts § 19–37 (1977).

**15.** In the event that both issues are resolved in the positive, the bankruptcy court may also consider, at its own discretion, whether DMGT was required to make a timely request for adequate protection and whether it did so satisfactorily, as discussed *supra* in footnote 12.