**GOLD LEAF CORPORATION, Plaintiff,**

**v.**

**HAMILTON PROJECTS, INC., Defendant.**

**No. 87–9106 (87–07265).**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

Oct. 20, 1987.

C. Edwin Rude, N. Sanders Sauls, Tallahassee, Fla., for Gold Leaf.

Mark Hildreth, Tallahassee, Fla., for Hamilton Projects.

**MEMORANDUM OPINION
AND ORDER**

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came on to be heard upon a motion for summary judgment filed by the plaintiff on August 13, 1987. The plaintiff Gold Leaf Corporation, (Gold Leaf), is a Chapter 11 debtor-in-possession and is seeking summary judgment on its complaint for turnover of assets, filed against Hamilton Projects, Inc. (Hamilton), pursuant to § 542 of the Bankruptcy Code. The debtor-in-possession, Gold Leaf, previously sought turnover under § 543 of these same assets, consisting of monies held by Hamilton in an operating account. Section 543 provides for turnover by a custodian of all assets of the estate. This Court issued an order dated May 14, 1987, (*In re Gold Leaf*, 73 B.R. 146 (Bkrtcy.N.D.Fla.1987)), holding that Hamilton was not a "custodian" within the definition of § 101(10) of the Bankruptcy Code and thus denying Gold Leaf's requested turnover under § 543. Gold Leaf then filed this adversary proceeding in accordance with Bankruptcy Rule 7001 et seq. and § 542 of the Code. Although Hamilton's previous challenge to Gold Leaf's turnover action was solely procedural in nature (i.e. the debtor-in-possession's reliance on § 543 rather than § 542), it now contests the turnover on substantive grounds, to wit: Hamilton contends that the funds held by it in the operating account are not funds of the estate, thus not subject to turnover under any statutory provision of the Code.

The Court's order of May 14, 1987, sets forth the factual background of the parties' relationship and to that extent said facts shall not be repeated here. However, based upon Hamilton's present challenge regarding the nature and ownership of the subject funds, the previous order should not be construed as a ruling thereon and should thus be amended to delete reference to Hamilton as an "escrow holder" of the "property of Gold Leaf"; that is the issue before this Court presently. Upon hearing, consideration of the argument and memoranda of counsel, and otherwise being duly advised in the premises, the Court makes the following findings of fact and conclusions of law.

In 1985, in furtherance of Gold Leaf's manufacturing and marketing operations with respect to the sale of the authentic materials from the renovation of the Statute of Liberty and Ellis Island, Gold Leaf negotiated with Sears for the sale to Sears of various products. Details of this negotiation were related to the Foundation and included in a Business Plan presented to the Foundation for the financial, organizational, operational, and marketing reorganization of Gold Leaf. A Memorandum of Agreement dated January 13, 1986, referencing this Business Plan was thereafter entered into between Gold Leaf and the Foundation. The Business Plan proposed the hiring of Hamilton as an operating agent for the Sears program (Business Plan: page 11) with the duties of processing documentation and handling the flow of funds. (Business Plan: page 13). The plan proposal was for Hamilton to serve as the administrative agent for *all* parties; the sub-licensees, manufacturers, Gold Leaf, the Foundation, and Sears. (Business Plan: page 15). Hamilton was to process all purchase orders from Sears, collect all funds due, distribute all funds per contracts, but hold no liability, responsibility, or warranty for goods. Secondly, it was to deposit remaining funds into the joint escrow account of Gold Leaf and the Foundation. (Business Plan: page 15).

On March 21, 1986, in accordance with the Business Plan, Gold Leaf and Hamilton entered into an agreement (hereinafter the Agreement) for Hamilton's involvement in the Sears project. The Agreement authorized Hamilton to receive the purchase orders and money as provided in the Business Plan; to deposit the money into an operating account; and to instruct the bank as to disbursement of said funds to manufacturers, the Foundation, and itself. The Agreement provided for the balance of funds to be deposited into the Foundation/Gold Leaf escrow account, all as proposed in the Business Plan. The Agreement specifically stated: "Hamilton's sole responsibility is as

a conduit for purchase orders from Sears for Sears Products and a collection agent for monies due from Sears for Sears Products. Hamilton shall not be responsible for any other matters related to the Sears Program, including but not limited to product shipment and delivery, product quality, or warranty for goods, and Gold Leaf waives any and all claims against Hamilton relating to the Sears Program. ... Gold Leaf hereby consents to Hamilton communicating directly with contractors, subcontractors, sublicensees, or manufacturers under contract with Gold Leaf."

Gold Leaf contends that it hired Hamilton as an administrative agent to assure Sears, the manufacturing supply creditors of Gold Leaf, and the Foundation that the direct costs of the sales of merchandise by Gold Leaf to Sears were paid; that Hamilton was to act as a mere conduit for purchase orders issued by Sears and for collection of the money due Gold Leaf from Sears; that Hamilton was not to be responsible for any of Gold Leaf's obligations or other matters related to the Sears program including product quality, warranty of goods, or shipment and delivery by suppliers. Gold Leaf claims right and title to the full $77,944.23 [1] in the operating account as property of the estate subject to the debtor-in-possession's use under § 363 of the Code. Gold Leaf thus requests turnover, an accounting, and damages for costs and fees against Hamilton.

Hamilton contends that the funds are not property of the debtor-in-possession estate under § 541 of the Code; alternatively, to the extent that they are determined to be funds of the estate, that Hamilton is nonetheless entitled to retain $63,393.74 as fees and expenses under the doctrine of recoupment; [2] that Gold Leaf is trying to assume in part and reject in part the controlling agreement between the parties dated March 21, 1986; and that Gold Leaf has failed to state a claim upon which relief may be granted.

Gold Leaf filed a motion for summary judgment. Hamilton responded, again contending that the funds are not property of the estate; that Sears and the manufacturers contracted with Hamilton, not Gold Leaf; that it, Hamilton, had direct contracts with Sears to sell the products and with the manufacturers to purchase the products; and that it controlled the operating account to the exclusion of Gold Leaf. Both parties have cited cases in support of their respective positions.

■ Prior to the actual Agreement between Hamilton and Gold Leaf, the Sears program was already underway. Based upon the correspondence between the parties involved in the project: Sears, the suppliers/manufacturers, Gold Leaf, the Foundation, and Hamilton, it is apparent that all believed Hamilton be to operating as an agent. For example, on March 6, 1986, the buyer for Sears wrote a letter to the representative of Hamilton, styled:

---

1. The operating account contained $120,730.35, $42,786.12 of which was deposited into the court registry pursuant to an interpleader action commenced by Hamilton. Hamilton asserts no interest in said funds and they are not subject of this opinion.

2. Hamilton previously filed a motion in the administrative case # 86–07265 for set-off of these monies. Upon hearing, Hamilton moved to withdraw its motion recognizing the doctrine of set-off to be inapplicable to the facts of this case, there being no mutuality of obligation upon separate transactions between these parties. The Court entered its order on August 10, 1987, denying the motion for set-off, stating: "The obligation or liability of a creditor for the recovery of *property of the debtor* that is in the creditor's possession is not a debt owing which may be netted out or set-off against that which the debtor owes the creditor. In such case the property is not owing to the estate of the debtor, but rather, is *owned* by it and no mutuality of debt exists between the parties." (emphasis supplied). Notably, this order was entered prior to any assertion by Hamilton that the funds were *not* property of the estate. However, notwithstanding the question of ownership of the funds, the doctrine of set-off is inapplicable because it requires that the obligations arise from separate transactions. Thus in response to Hamilton's Motion for Order Reconsidering Order ... Denying Motion to Allow Set-off ... and for Amended Findings, filed on August 20, 1987, this Court entered its order of October 20, 1987 clarifying the basis of its determination in accordance with the August 20, 1987, motion and principles of set-off.

Hamilton Projects, Inc.
c/o Edgar B. Mooney
Operating Agent for Gold Leaf Corp.
Attached to this letter was a document referred to as Contract # 627124 dated 3/6/86, listing as "Source": Hamilton Projects, Inc.—c/o Edgar B. Mooney—Operating Agent for Gold Leaf Corp. On March 7, 1986, this same Edgar Mooney issued a memorandum to all suppliers stating: "Hamilton Projects, Inc. is acting as operating agent for the Sears/Gold Leaf Authentic Materials Program in which you are participating."

It is apparent from the record and documents submitted herein that Hamilton was in fact an administrative operating agent for Gold Leaf Corporation and contracted with the parties solely in this capacity. As such, it had no primary liability for the debts of Gold Leaf nor did it have any outstanding right or title to the subject operating account. It was merely a collection agent as designated in the Business Plan. Hamilton collected the monies from Sears and deposited them with the bank. But for Hamilton's participation in the program, the funds due Gold Leaf from Sears would have been remitted directly to Gold Leaf. Hamilton was thus a mere conduit.

The case of *In re World Communications, Inc.*, 72 B.R. 498 (D.C.Utah 1987), is supportive of this conclusion. The controversial fund in *World Communications, Inc.* was an escrow account funded by credit card purchase charges including potential "charge-backs". Factors employed by the Court in classifying the particular escrow under consideration were: a) who initiated it?; b) who exercises control over it?; c) the incipient source of the fund; d) the nature of the funds put into it; e) the recipient of the remainder; f) target of the benefits; and g) purpose of its creation. Using these same factors in the case *sub judice*, this Court finds that the subject account was conceived by Gold Leaf. The funds came from the sale of Gold Leaf products; they were proceeds due to Gold Leaf who was to be at least partial recipient of the remainder after payment of certain expenses. Although Hamilton directly contracted with both Sears and the manu-

facturers, it did so as an agent for Gold Leaf at the behest of Gold Leaf. The account was established solely to assure the participants in the Sears program that the direct costs of the sales of products were paid. Thus, as in *World Communications, supra*, although the holder of the fund was in temporary control, it was solely for the processing of the fund; the holder was nothing more than a conduit. Gold Leaf is therefore deemed to have *some* interest in the account. Section 541 controls whether this interest becomes property of the estate.

■ The Court recognized the difficulty in diagnosing escrow and trust accounts in the context of § 541 property of the estate, and acknowledged the expansive scope given § 541 by *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983), to wit: "as a definition of what is included in the estate, rather than as a limitation." Hamilton has cited the cases of *In re Amco Products*, 50 B.R. 723 (Bkrtcy.W.D.Mo. 1983), and *Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority*, 72 B.R. 619 (D.C.Pa. 1985), both dealing with specific accounts held not to be property of the estate. These cases are distinguishable. In *Creative Data*, the monies in the account represented a loan to the debtor which was to be disbursed to the debtor only upon his proper presentation of documents reflecting valid expenditures. The fund clearly did not belong to the debtor until the condition precedent was satisfied. In *Amco Products*, a "differential" account was established in relation to the bank's purchase of contracts from the debtor for less than face value. This "reserve" account of 5% was for the potential shortfall realized upon any future defaults in payment under said contracts. Upon filing of a petition and the debtor's request for turnover of this reserve account under § 542, the Court held that the debtor had only a "potential interest" in the fund; it only had a right to monies remaining after all contracts were liquidated; that the debtor had no right to the funds while the dealer paper remained outstanding. As the bank had actually

purchased the contracts, the monies coming in therefrom belonged to the bank and only a percentage inured to the benefit of the debtor under specific conditions. Yet in the case before us the money was directly due to the debtor from Sears. The account was created to pay Gold Leaf's expenses incurred in the manufacture of products from proceeds due Gold Leaf upon sale of those products. The debtor's pre-petition ownership interest in the operating account is evident.

Section 541(c)(1) recognizes that assets that would otherwise be § 541(a)(1) property will come into the estate regardless of restrictions on the debtor's right to transfer. (Section 541(c)(1) and *In re Creative Data, supra.*) In the case before this Court, Gold Leaf "would otherwise" have been entitled to the fund, and thus the disbursement priority schedule which acted as a restriction on the order of transfer is ineffective to defeat the encompassing language of § 541.

■ There are, however, other protections to counter-balance the effect of the broad scope of § 541. For instance, secured creditors may demand adequate protection prior to turnover of collateral deemed to be property of the estate. *U.S. v. Whiting Pools, supra,* and § 363(e). Section 542(b) provides that under certain conditions, an entity owing a debt that is property of the estate may off-set that debt under § 553 against a claim against the debtor. In the case of *In re N.S. Garrott & Sons,* 772 F.2d 462 (8th Cir.1985), a constructive trust for the benefit of the creditor was imposed upon the escrow fund deemed to be technically § 541 property of the estate. Although the facts before us give rise to none of these legal or equitable remedies, Hamilton *does* request the Court's application of equity in this case under the doctrine of recoupment. Specifically, Hamilton asserts its entitlement to withhold the sum of $63,393.74, composed of a $50,000.00 fee due under the Agreement as well as $13,393.74 for reimbursement of expenses incurred in administering the operating account, also payable pursuant to the Agreement. (paragraph 8 of the Agreement).

■ As referenced previously herein, (see f.n. # 2), this Court denied Hamilton's motion for set-off as there was deemed to be no mutuality of obligation existing between the parties; Hamilton had no claim or independent cause of action arising out of a transaction extrinsic to the March 21, 1986, Agreement. Recoupment is a similar principal to that of set-off but requires no such mutuality; recoupment requires that the demand of the creditor arise from the same transaction as the claim or cause of action of the debtor. (4 *Collier on Bankruptcy,* ¶ 553.03 at 553–12 (15th ed. 1983.) Phrased differently, "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." "[It] refers to the diminishment of a claim by matters decreasing it in relation to [that] same transaction." *In re Monongahela Rye Liquors, Inc.,* 141 F.2d 864, 869 (3rd Cir. 1944), and 2 *Cowan's Bankruptcy Law and Practice* 131 (2d Ed.1978), respectively.

■ Recoupment is not specifically provided for in the Bankruptcy Code and its availability to creditors as a defense is therefore questioned in the context of bankruptcy proceedings. It has been determined that a creditor *may* assert the doctrine of recoupment even though not encompassed in the provisions of the Bankruptcy Code; that the essential distinction between set-off and recoupment renders unnecessary any inclusion of the latter in the Code:

> Certainly in any suit or action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be set off, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to former Section 68 or to Section 553(a).

*Collier,* supra at pg. 553–14.

In applying the doctrine of recoupment in a bankruptcy context under the old Bankruptcy Act in *In re Monongahela Rye Liquors, supra* at 869, the Court stated, "The rule of recoupment in bankruptcy derives from the rule that the trustee takes the bankrupt's property subject to the equities therein. It does not attach by reason of the set-off provisions of Sec. 68, sub. a." Recoupment has likewise been applied in cases under the Code. See, *In re Clowards, Inc.,* 42 B.R. 627 (Bkrtcy.D.Idaho 1984): "[Section 553] does not specifically alter the right of recoupment." See also *Lee v. Schweiker,* 739 F.2d 870 (3rd Cir. 1984) at 875; *In the Matter of Pennsylvania Tire Company,* 26 B.R. 663 (Bkrtcy.N. D.Ohio 1982) at 675.

Hamilton has cited the case of *Waldschmidt v. C.B.S., Inc.,* 14 B.R. 309 (Bkrtcy.M. D.Tenn.1981) in support of the application of recoupment in the case *sub judice.* The Court in *Waldschmidt* held that certain royalties arising from the sale of recordings made by the bankrupt pursuant to contract were property of the estate but that the recording company could recoup certain advances it had made to the bankrupt from the royalties. *Waldschmidt,* however is distinguishable. There the trustee filed a motion for summary judgment to obtain a determination as to his entitlement to the assets based upon the provisions of the contract between the parties. The creditor raised the defense of recoupment, likewise based upon the contract. In contrast, the debtor-in-possession in the instant case is not seeking enforcement of a contract provision nor is it suing for money damages on a cause of action arising in contract outside and independent of the statutory provisions of the Bankruptcy Code. Rather it seeks turnover of property of the estate pursuant to § 542, a remedy exclusive to the bankruptcy proceedings and not arising out of the same contract or transaction between the parties as does the creditor's request for fees and expenses. In other words, Gold Leaf does not claim that Hamilton owes it based upon the contract; this is, however, Hamilton's claim against Gold Leaf. It thus appears that recoupment is an improper defense to the debtor-in-possession's statutory right to turnover. As stated in *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984), "The fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, however, does not mean that the two arose from the 'same transaction'. In bankruptcy, the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract. *See, In re Sherman,* 627 F.2d 594 (2d Cir.1980); *Waldschmidt v. C.B.S., Inc.,* 14 B.R. 309 (M.D.Tenn.1981)." The cases previously cited herein with regard to recoupment are likewise distinguishable. In *In re Clowards, Inc., supra,* the trustee brought an action against contractors to recover the balance of amounts due the debtor under the contracts and the contractors asserted damages by way of recoupment against the debtor based upon those same contracts. In *In the Matter of Pennsylvania Tire Company,* the debtor brought suit for collection of accounts receivable and the creditor counter-claimed for breach of contract; again both actions arising directly upon the contract between the parties. In *Lee v. Schweiker, supra,* the debtor sued to recover amounts which the Social Security Administration had withheld from her checks. The S.S.A. had withheld said sums for the purpose of recouping earlier overpayments. The Court in holding that the parties' claims did not arise from the "same transaction" stated, the general premise that ... "a social welfare statute entitling an individual to benefits is not a contract, and ... the obligation to repay a previous overpayment is a separate debt subject to the ordinary rules of bankruptcy." The Court recognized the social welfare payments as statutory "entitlements" rather than contractual rights, and denied the creditor the right to recoup these overpayments from post-petition welfare checks.

As the recoupment cases cited by Hamilton as well as those found by independent research of the Court are all factually distinguishable, the creditor, Hamilton, has

failed to provide this Court with persuasive authority for application of the doctrine of recoupment to the facts in this case. Its claim against the debtor-in-possession for fees and expenses pursuant to paragraph 8 of the Agreement must therefore be asserted as an unsecured claim against the estate in accordance with the policies and procedures of the Bankruptcy Code.

In light of this Court's ruling that Gold Leaf's § 542 motion for turnover does not arise under the March 21, 1986, Agreement, it logically follows that it is not a "benefit" which Gold Leaf is attempting to assume under § 365 while rejecting its burden to pay Hamilton. The debtor-in-possession contends that it has rejected the Agreement by notifying Hamilton of termination. Based on the determination that Hamilton's assertion as to partial assumption/partial rejection is without merit, this Court need not address the validity of Gold Leaf's purported contract rejection at this time.

Hamilton has alleged that Gold Leaf failed to state a claim upon which relief could be granted. To the contrary, this Court deems the account containing approximately $77,944.23 to be property of the estate that the debtor-in-possession may use under § 363 and thus subject to turnover under § 542 without diminution by Hamilton.

Gold Leaf has requested that a judgment be entered against Hamilton for damages suffered by the estate as a result of defendant's refusal to turnover the account balance, including costs and attorney fees. There has been neither evidence nor authority presented in support of this relief and said request shall therefore be denied. It is accordingly

ORDERED AND ADJUDGED that the summary judgment for turnover be, and it hereby is, entered in favor of Gold Leaf Corporation and Hamilton Projects, Inc. is hereby ordered to turn over the subject funds to the debtor, Gold Leaf Corporation, within ten (10) days of the date hereof.