In re AGSY, INC., formerly known as General Rent–A–Car Systems, Inc., Debtor.

In re CGRE, INC., formerly known as General Rent–A–Car, Inc., Debtor.

DYNASTY EXPRESS CORP., d/b/a General Rent–A–Car, Plaintiff,

v.

Eric C. KURTZMAN as Chapter 7 Trustee of the Estates of AGSY, Inc., and CGRE, Inc., BGIN, Inc. and the Trust Company of the South, Defendants.

Bankruptcy Nos. 90 B 20415, 90 B 20416.

No. 90 Adv. 6155.

United States Bankruptcy Court, S.D. New York.

Oct. 23, 1990.

Kurtzman & Haspel, Nanuet, N.Y., for trustee.

Gelfand & Softness, Miami, Fla. (Joanne Gelfand, of counsel), Pestcoe & Roth, P.A., Coral Gables, Fla. (Bernard C. Pestcoe, of counsel), Salomon Green & Ostrow, P.C. (Nicholas F. Kajon, of counsel), New York City, for Dynasty Exp. Corp.

Serchuk & Zelermyer, White Plains, N.Y. (Benjamin Zelermyer, of counsel), for Trust Co.

## DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy of two out of three entities which sold their car rental

businesses to the plaintiff, Dynasty Express Corp. d/b/a General Rent–A–Car Corp. ("Dynasty"), has moved for a partial summary judgment dismissing the first, second and ninth claims in Dynasty's adversary action. The third selling entity, BGIN, Inc., formerly known as General Rent–A–Car International, Inc. ("BGIN") is not a debtor in a bankruptcy case and is not a party to the adversary action. Dynasty argues that the trustee's motion for partial summary judgment should be denied and that the court should enter an order granting summary judgment in favor of Dynasty as to the first, second and ninth claims in its complaint.

## FACTUAL BACKGROUND

On May 14, 1990, AGSY, formerly known as General Rent–A–Car Systems, Inc. and CGRE, formerly known as General Rent–A–Car, Inc. (collectively, the "debtors") filed with this court voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. Thereafter, an interim trustee was appointed, who later qualified as the trustee in bankruptcy.

The plaintiff, Dynasty, is a corporation located in Florida and is the successor to AMS Corp. which purchased the assets of the two debtor corporations and those of the nondebtor entity, BGIN, pursuant to a purchase agreement dated March 25, 1989 (the "Asset Purchase Agreement").

Pursuant to the Asset Purchase Agreement the two debtor sellers and the non-debtor seller, BGIN, jointly and severally agreed to indemnify Dynasty from any loss, damage or expense relating to environmental or other liabilities with respect to the purchased assets.

The three selling entities and Dynasty, as the buyer, entered into a separate escrow agreement (the "escrow agreement"), dated March 25, 1989, which states that Dynasty, the buyer, insisted, as a condition of the Asset Purchase Agreement, that $3,810,000.00 be placed in escrow with the Trust Company of the South ("Trust Company") of Miami, Florida, for the benefit of Dynasty, with the remainder, if any, to be paid to the sellers in accordance with the escrow agreement.

Pursuant to the sellers' wire instructions, dated April 28, 1989, $3,810,000.00 of the purchase price paid by Dynasty for the sellers' assets was paid to Trust Company under the escrow agreement to establish the escrow fund. The escrow agreement provides that the escrow funds were to be deposited in five separate escrow accounts by the Trust Company for the payment of certain liabilities of the three selling entities, including liabilities for environmental clean-up which liabilities were not assumed by Dynasty and for the claims of other parties, including trademark litigation and certain scheduled, pending law suits against the sellers' businesses.

The escrow agreement provides that the Trust Company may invest the funds in certain low risk investments, including United States debt instruments, in accordance with instructions from the sellers. In the absence of such instructions, the Trust Company shall invest the escrow funds only in United States collateralized instruments. All income earned and received from the investments shall belong exclusively to the sellers. The Trust Company was authorized to disburse escrow funds in accordance with instructions of the sellers or Dynasty.

Paragraph 5(c) of the escrow agreement provides that if there is a conflict as to the corrective action to be taken following the receipt of environmental reports, or Dynasty objects to the contractors selected by the sellers, such conflict would be referred to a panel established pursuant to the escrow agreement. Paragraph 5(d) of the escrow agreement provides that any funds not committed or spent from Escrow Fund II at the end of 180 days from closing shall be returned to the sellers.

By an agreement dated May 10, 1989, the selling debtors and Dynasty, as purchaser, agreed that certain disputed invoices of contractors and professionals would be paid from the escrow funds (the "May 10, 1990 agreement").

By letter dated August 10, 1990, the trustee in bankruptcy advised the Trust

Company escrow agent to pay interest on the escrow funds to the trustee in bankruptcy on a monthly basis and instructed the Trust Company that "no payments are to be made out of the Escrow Funds without the express written consent of the Trustee." Upon receipt of this letter, the Trust Company escrow agent declined to pay invoices submitted pursuant to the escrow agreement for environmental consultants and professionals for services performed by them under the escrow agreement, which currently amount to approximately $200,000.00.

By a summons and complaint dated October 11, 1990, Dynasty commenced an adversary action in this court against the trustee in bankruptcy of the two selling debtors, the nondebtor third selling entity, BGIN, and the Trust Company escrow agent.

Dynasty's first claim seeks a declaratory judgment that pursuant to 11 U.S.C. § 541 and applicable non-bankruptcy law, neither the sellers, the trustee in bankruptcy nor the estates have any interest in the principal amount of the escrow, other than a contingent remainder interest with respect to any surplus remaining after satisfaction of the terms and conditions of the escrow agreement.

Dynasty's second claim seeks a declaratory judgment that pursuant to the terms of the escrow agreement and/or the May 10, 1990 agreement, the trustee in bankruptcy has no basis for disputing: (i) the payment of the unpaid invoices; and (ii) any other invoices rendered by contractors or professionals, other than as may be permitted in the escrow agreement.

Dynasty's ninth claim refers to Rule 65 of the Federal Rules of Civil Procedure and 11 U.S.C. § 105(a) and seeks to enjoin the trustee in bankruptcy from taking any action interfering with the rights of Dynasty and third parties under the escrow agreement; and directing the Trust Company to pay (a) the unpaid invoices, (b) invoices to be rendered under the escrow agreement, unless a timely objection is made, and (c) invoices to be rendered under the May 10, 1990 agreement.

The parties agree that in accordance with the terms of the escrow agreement, the nonbankruptcy applicable law which governs the escrow agreement is that of the State of Florida, where the agreement was executed and to be performed.

The Trust Company has filed an answer containing an affirmative defense that the plaintiff, Dynasty, has failed to join in this action those contractors and professionals whose invoices have not been paid, thereby exposing the Trust Company to incurring multiple or inconsistent obligations. The Trust Company also cross-claimed for all liabilities it has incurred in connection with this action. Additionally, the Trust Company has interpleaded its obligations under the escrow agreement and seeks to be indemnified for all costs and legal fees incurred or to be incurred in connection with this adversary proceeding.

The trustee in bankruptcy of two of the three selling car rental entities maintains that the escrow fund is property of the debtors' estates, at least as to the amounts deposited by the purchaser and allocated to the purchaser's indemnification obligation with respect to two of the three selling entities. Dynasty, as successor in interest to the purchaser, contends that no part of the principal of the escrow funds can be characterized as property of the debtors' estates because the debtors only have a contingent remainder interest in the balance of the principal which might be remaining after all environment claims and other specified claims against the purchased assets and businesses are satisfied by the Trust Company, as escrow agent of the fund. The trustee in bankruptcy of the debtors contends that until the concept of indemnity is triggered and Dynasty is held liable for environmental and other claims contemplated under the Assets Purchase Agreement, the escrow funds allocated to the purchase price for the debtors' businesses must be regarded as property of their estates because under the escrow agreement the debtors have the right to receive interest on the principal and the right to direct that the principal be invested in certain prescribed safe investments such

as Treasury notes and government bonds. Additionally, the trustee notes that under no circumstances may any portion of the escrow funds be returned to Dynasty, as successor to the purchaser, because the funds represent the sales price of assets sold to the purchaser and are to be turned over to the sellers, including the trustee of the two debtors, after all environmental claims and other third party claims contemplated under the Asset Purchase Agreement have been established.

There is no dispute that the sellers, including the trustee in bankruptcy of two of the three car-rental businesses, have a contingent remainder interest in the escrow funds, conditioned upon the existence of a balance remaining after all environmental claims and specified claims of third parties are satisfied. However, based upon the terms of the Asset Purchase Agreement, the escrow agreement and the conduct of the parties, the concept of indemnification is not totally applicable. Dynasty need not first be determined to be liable for environmental claims and other specified third party claims against the purchased assets and entitled to indemnification from the trustee in bankruptcy and from the third nondebtor seller before the Trust Company, as escrow agent, is required to pay such claims. In accordance with the terms of the escrow agreement, the Trust Company may pay claims submitted by contractors and others who perform corrective services in connection with environmental claims or who have claims for professional services contemplated under the Asset Purchase Agreement, provided that the purchaser and the sellers agree to such payments or do not dispute the propriety of the claims. In the event of a dispute, a panel agreed to by the parties will determine if payment should be made.

Hence, it is undisputed that the trustee in bankruptcy does not have unfettered control over the escrow funds and that the establishment of Dynasty's right to indemnification is not a condition precedent to Dynasty's right to direct that escrow funds be paid to satisfy claims for which Dynasty might be entitled to indemnification. Not only does the escrow agreement reflect that claims against the purchased assets may be paid from the escrow funds, if not disputed, or if determined by an independent panel, even before Dynasty's right to indemnification is established, but the parties have permitted the Trust Company to pay such undisputed claims without first determining if Dynasty is liable for such claims or if Dynasty is entitled to indemnification for them.

Neither the concept of establishing Dynasty's right to indemnification, nor the trustee in bankruptcy's right to receive interest on the principal and to specify which safe investments should be followed by the Trust Company, detract from the undisputed fact that the only interest that the trustee possesses with respect to the escrow fund is the contingent right to receive the remainder, if any, after all undisputed or agreed environment and other specified claims against the assets purchased by Dynasty are satisfied. Until such event, the proceeds of the purchase price deposited in the escrow fund serve to benefit Dynasty as a cushion against environmental and other specified claims asserted against the assets purchased by Dynasty from the three car-rental businesses.

It further appears that there may not be any escrow funds remaining to be paid to the trustee after the satisfaction of all environmental and other claims specified in the Assets Purchase Agreement because the Trust Company, as escrow agent, has received bills from contractors and professionals who have performed corrective services with respect to environmental problems which total more than the balance remaining in the escrow fund.

A turnover of the escrow fund to the trustee in bankruptcy would defeat Dynasty's contractual right to protection from environmental claims against the purchased car-rental businesses and would also detract from the rights of the third party contractors who are also beneficiaries of the fund. Indeed, if the trustee in bankruptcy obtained possession of the fund at this time and paid the claims of the environmental contractors from whom the escrow fund was established, with the hope

that there might be a balance remaining for the debtors' estates, such payment to the contractors before a proportionate distribution is made to all other allowed claims against the debtors' estates might violate 11 U.S.C. § 549, which deals with unauthorized, postpetition transfers, and 11 U.S.C. § 726, which deals with the statutory levels in the distribution of property of the estate. On the other hand, if the trustee took possession of the escrow funds and refused to pay the contractors for whom the funds were established, on the theory that the escrow funds should be applied to the administration expenses and claims of all the creditors of the debtors' estates, such a result would confer greater rights upon the debtors' estates than they were entitled under the existing Assets Purchase Agreement and escrow agreement. Manifestly, the trustee in bankruptcy of the two debtors' estates is limited to what constitutes property of the debtors' estates, subject to all valid restrictions and limitations on the concept of property of the estate. In sum, the undisputed facts in this case reflect that the trustee in bankruptcy has a contingent remainder interest in the escrow funds to the extent of the balance of any proceeds held by the Trust Company, as escrow agent, after all environmental and other specified claims have been satisfied in accordance with the terms of the Assets Purchase Agreement and the escrow agreement. Unless and until a balance remains after the contingency is resolved, the trustee in bankruptcy has no immediate possessory interest in the escrow funds within the meaning of the concept of property of the estate so as to entitle him to an order directing the Trust Company, as escrow agent, to turn over any portion of the escrow fund representing a portion of the purchase price to be paid to the three car-rental sellers which is allocable to the two debtors in this case.

## DISCUSSION

Partial summary judgment with respect to the first, second and ninth claims in the adversary complaint is sought both by the defendant, bankruptcy trustee, and the plaintiff, Dynasty. The trustee in bankruptcy claims that the escrow funds, which consist of a portion of the purchase price which Dynasty's predecessor in interest paid for the purchase of three car-rental businesses sold by the two debtors and the nondebtor entity, BGIN, constitute property of the debtors' estates which should be turned over to the trustee. Dynasty maintains that the escrow funds were deposited with the Trust Company, as escrow agent, to protect Dynasty against environmental and other specified claims with respect to the car-rental businesses purchased from the two debtors and the nondebtor, BGIN. Accordingly, Dynasty seeks a ruling that the escrow funds referred to in the first, second and ninth claims in its complaint do not in any part qualify as property of the estates of the two debtors and should be applied towards the payment of environmental and other specified claims against the purchased assets, as contemplated under the escrow agreement. Dynasty's position is bottomed on the proposition that the trustee in bankruptcy has a contingent remainder interest in the principal only and that the trustee's present possessory interest in the escrow funds is limited by the Assets Purchase Agreement to the interest earned on the invested proceeds. Hence, both parties reason that there are no genuine disputed issues as to any material facts and that a partial summary judgment may be entered.

In ruling on a motion for summary judgment the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court must deny summary judgment where there is a genuine issue as to any material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Hamilton v. Smith*, 773 F.2d 461 (2d Cir.1985). The moving party for summary judgment has the burden of showing the absence of any genuine issue as to all material facts which

entitle him to judgment as a matter of law. *Katz v. Goodyear Tire & Rubber Company*, 737 F.2d 238, 244 (2d Cir.1984); *See* 2 J. Moore, A. Vestal, P. Kurkland, Moore's Federal Practice and Procedure § 17.10 at 17–34 (2d ed. 1987).

■ The concept of property of the estate is defined in 11 U.S.C. § 541(a)(1) to include all legal or equitable interests of the debtor in property as of the commencement of the case. Therefore, bankruptcy law determines what interests of a debtor may become property of the estate. However, nonbankruptcy state law defines the scope and existence of that interest. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924). In this case, Florida law applies in the determination of the debtors' interests in the escrow fund because the contracts between the parties were executed and were to be performed there.

■ Under Florida law, legal title to property placed in escrow remains with the grantor until the occurrence of the condition precedent specified in the escrow agreement. *Gassen v. Universal Building Materials, Inc., (Matter of Berkley Multi–Units, Inc.)*, 69 B.R. 638, 641 (Bankr.M.D. Fla.1987); 22 Fla.Jur.2d § 7, at 223 (1980); *Peters v. Spielvogel*, 163 So.2d 59 (Fla. 3d DCA 1960). In the *Gassen* case the debtor was the purchaser of real estate and pursuant to the purchase agreement deposited funds with an escrow agent pending the closing of title on the condition that the seller could deliver a good title. The condition could not be fulfilled at the time the debtor filed its Chapter 11 petition. Accordingly, it was held that the funds deposited by the debtor remained property of the estate because the condition precedent specified in the escrow agreement had not occurred. *Gassen v. Universal Building Materials, Inc. (Matter of Berkley Multi–Units, Inc.)* at 642. The court cited as authority for its ruling the Fifth Circuit decision in *Wilson v. United Savings of Texas (In re Missionary Baptist Foundation of America, Inc.)*, 792 F.2d 502 (5th Cir.1986). In that case the debtor's predecessor in interest had obtained a loan from a bank which had been assigned to the debtor. A portion of the loan was held by the bank in escrow to assure that the expenses of the property purchased by the debtor's predecessor were paid during the term of the loan. After the loan was repaid the escrow funds were regarded as property of the debtor's estate because the contingency had occurred when the debtor's liability for the loan had been extinguished. *Wilson v. United Savings of Texas (In re Missionary Baptist Foundation of America, Inc.)* at 506. Had the debt not been extinguished, the debtor would have held a contingent interest in the escrow funds. *Id.*

■ In the instant case, it is not disputed that the debtor holds a contingent remainder in the escrow funds created when Dynasty wired a portion of the purchase price to Trust Company to be held in escrow for the payment of environmental and other specified claims against the car-rental assets purchased by Dynasty. However, the trustee in bankruptcy contends that he is entitled to the escrow funds as property of the estate before the contingency occurred and all environmental and specified claims were satisfied. In essence, the trustee seeks greater rights to the fund than the prepetition debtors had. However, the "estate succeeds to only such title and rights in the property as the debtor had at the time the petition was filed." *In re N.S. Garrott & Sons*, 772 F.2d 462, 467 (8th Cir.1985).

The trustee cites *Cradock v. Cooper*, 123 So.2d 256 (Fla. 2d DCA 1960) for the proposition that when a buyer is the grantor of an escrow fund and has no remainder interest in the fund, a misappropriation of the escrow fund by the escrow agent will result in the seller being held liable for the loss, because the buyer retained no legal title to the fund. The fact that the buyer did not retain legal title to the fund, which passed to the escrow agent, does not mean that a debtor buyer would be entitled to a fund which is held in escrow subject to an

unfulfilled contingency when such fund was created by the seller.

The trustee also cites *Gold Leaf Corp. v. Hamilton Projects, Inc. (In re Gold Leaf Corp.)* 78 B.R. 1018 (Bankr.N.D.Fla.1987), in support of his claim to the escrow fund. In the *Gold Leaf* case, the debtor arranged to sell certain authentic materials from the renovation of the Statue of Liberty and Ellis Island to a specific retailer. In connection with this sales arrangement the debtor established Hamilton Projects, Inc. as its administrative agent to process all purchase orders and collect all funds due from the retailer and deposit them in an operating account, from which Hamilton would be reimbursed for its services. After the debtor filed its Chapter 11 petition, it argued that the operating account was property of its estate. The court concluded that the operating account was property of the debtor's estate as proceeds due to the debtor from the sale of merchandise and that Hamilton was required to turn over the fund to the debtor because Hamilton was an agent of the debtor and a mere conduit of the proceeds in the fund. *Id.* at 1024. Thus, the dispute was between the debtor and the holder of the fund, Hamilton, and did not implicate any rights of the purchasing retailer. In the instant case, the conflict is between the purchaser, Dynasty, and the trustee in bankruptcy of two of the three selling car rental businesses. The escrow agent, Trust Company, does not contend that the unfulfilled contingency for which the escrow fund was created served to benefit or protect any of its interests.

The trustee in bankruptcy also cites in support of his position *World Communications, Inc. v. Direct Marketing Guaranty Trust (In re World Communications, Inc.),* 72 B.R. 498 (D.Utah 1987). As in the *Gold Leaf* case, the issue involved a dispute between the debtor and the holder of escrow funds which the debtor created with the holder for the collection of credit card sales made by the debtor and processed by the holder for a fee. The district court held that the escrow account constituted property of the estate, subject to the holder's security interest for its fees as compensation for the holder's collection services because "the escrow account constitutes a form of conduit" for the debtor's proceeds. 72 B.R. at 501. The case did not involve the rights, if any, of the debtor's customers or any contingency created under the escrow agreement for the benefit of such customers.

In a more closely analogous case involving Florida law, a debtor developer deposited funds in escrow to ensure the Florida Division of Land Sales that there would be sufficient funds available to assure the installation of roads and drainage facilities. The contingency was never fulfilled and the roads and drainage facilities were not completed. The court held that the escrow fund was not to be turned over to the debtor as property of the estate because the debtor could not have any part of the fund until such time as the debtor established that all prior claims in the fund have been paid and that a residuum remained to which the debtor was entitled. *In re Palm Beach Heights Development & Sales Corp.,* 52 B.R. 181 (Bankr.S.D.Fla.1985).

The instant case is more compelling because the funds were not deposited in the escrow fund by the debtor. Here the purchaser, Dynasty, wired the funds to the escrow agent, Trust Company, for the purpose of ensuring that all environmental and other specified claims were satisfied in full before the debtor was entitled to receive the balance of the fund, if any. The debtor's contingent remainder interest has not become fixed. Indeed, it appears that the claims against the fund exceed the existing proceeds. Based upon the undisputed facts in this case, the funds placed in escrow by Dynasty remain property of the grantor, Dynasty, until the occurrence of the condition precedent specified in the escrow agreement and such funds are not property of the debtors' estates.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core

proceeding in accordance with 28 U.S.C. § 157(b)(2)(E).

2. The trustee in bankruptcy has not established that he is entitled to partial summary judgment with respect to the first, second and ninth claims asserted in the complaint filed by the plaintiff, Dynasty.

3. The principal, exclusive of interest, in the first, second and ninth claims asserted in the complaint filed by the plaintiff, Dynasty, are not property of the debtors' estates.

4. The trustee's motion for partial summary judgment as to the first, second and ninth claims asserted in the complaint is denied as to the principal in the funds and is granted to the extent of the interest on the principal to which the debtors are entitled under the escrow agreement.

5. Dynasty's motion for partial summary judgment with respect to the first, second and ninth claims in its complaint is granted.

SETTLE ORDER on notice.